THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY JENKINS, Defendant-Appellant.

First District (2nd Division)   No. 77-1403

Opinion filed December 26, 1978.

Sheldon S. Grauer, of Maywood, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Harry Jenkins, was charged by indictment with the attempt murder, aggravated battery and attempt armed robbery of Nicholas Comito. Pursuant to a jury trial defendant was convicted of the offenses but judgment was entered solely upon the attempt murder. Defendant was sentenced to a term of 100-200 years in the Illinois Department of Corrections. Defendant appeals from this conviction, raising for our review issues relating to (1) his competency to stand trial, (2) his statement given to a police officer, and (3) his lengthy sentence.

On May 10, 1976, Nicholas Comito arrived home from work and then went outdoors to cut his lawn. After doing so he proceeded to the back yard and prepared to empty the grass-catcher attachment to the lawnmower. At this time Mr. Comito noticed an individual standing next to him. Mr. Comito observed this individual and was then told to relinquish his wallet or be killed. Mr. Comito, at trial, described this individual in detail. The individual was described as a male Negro, about six feet tall, slim or lanky, with straight black hair containing a golden tint on the left side. Mr. Comito also indicated that the individual had a horizontal scar on his nose, wore a gold earring in his right ear and was attired in a white shirt, blue denim pants and a wide brown belt.

Mr. Comito refused to relinquish his wallet and began to walk away from his attacker. Mr. Comito was then shot in his right side. Mr. Comito fell back, stating "he shot me, he shot me," and prevented himself from landing on the ground. He began moving away (backwards) from his attacker but the attacker walked closer, pointing the gun at Mr. Comito. Another shot was fired. Mr. Comito was struck in the left eye. This gun shot caused the permanent blinding of Nicholas Comito.

The defendant, Harry Jenkins, was subsequently arrested in his home on May 11, 1976. Chicago Police Officer McMahon, in searching for defendant, found defendant hiding in a cabinet in the basement laundry room. A gun was visible to Officer McMahon and when defendant reached for the gun the officer called for assistance and pulled defendant's arm.

Subsequent to the arrest of defendant by the Chicago Police, Officer Gryncewicz of the Oak Park Police arrived at the Area 5 Chicago Police Station. In the presence of Officer Gryncewicz and after a reading of defendant's rights, defendant gave an oral statement. Defendant indicated that a man started hollering at him. Defendant walked over to the man and stated "This is a stick up" or "Shut up." Defendant stated that the man pushed defendant, defendant returned the push, pulled a gun and fired two shots at the man. Defendant's statement, therefore, contained admissions of attempt robbery and the shooting of the victim.

Prior to trial, defendant moved the trial court to suppress his statement. Defendant did not testify at the hearing on this motion. The defense offered the testimony of defendant's sisters, Mary Ann and Valerie, and defendant's mother, Hattie Mae. Mary Ann testified that she and defendant were called names by the arresting officer. She further stated that defendant, while in the basement, was hit in the head with his gun and was beaten and kicked by 10 officers. She stated that she noticed blood on defendant's head. Valerie indicated that she saw no blood on defendant. She further testified that she saw police officers hitting defendant in a squad car. Defendant's mother testified that there was blood in the house, including the basement.

After hearing the testimony and arguments of counsel, the court found that defendant's inculpatory remarks were voluntarily given. Defendant's motion to suppress was denied.

Also prior to trial defendant moved the court for a psychiatric examination. This motion, which we will subsequently analyze in depth, was denied.

A trial ensued at which defendant did not testify. The prosecution offered the testimony of, among others, Elvin Webster, defendant's 15-year-old accomplice, Lionel Watson, the victim's next door neighbor and the victim, Nicholas Comito. The defendant offered the testimony of his sisters, his uncle, Officer Ralph Stork and defendant's mother.

We believe it particularly important to summarize the testimony of Elvin Webster and Lionel Watson. Webster testified that he was with defendant on the afternoon of May 10, 1976 and at that time defendant had, in his possession, a pistol. They proceeded to Mr. Comito's residence and upon viewing Mr. Comito defendant stated "Let's stick him up." Webster objected but remained with defendant. Webster testified that defendant, with pistol in hand, announced "Stick up," and shot Mr. Comito. Webster heard but did not see the second shot.

Lionel Watson, Mr. Comito's next-door neighbor, testified that he was at home on the afternoon of May 10, 1976. Watson was working in the garden. Watson stated that after hearing a firecracker-like sound he saw Mr. Comito. Mr. Comito was looking at Watson and stated "They shot me." Watson subsequently heard a second shot and saw Mr. Comito grabbing his bleeding face. Watson testified that he never saw anyone run from Mr. Comito's yard.

At the conclusion of the trial, defendant was found guilty of attempt murder, aggravated battery and attempt armed robbery. Sentence was imposed upon the attempt murder conviction. It is from this conviction that defendant appeals.

While defendant was in the custody of the Oak Park Police Department, defendant admitted shooting Nicholas Comito. On appeal,

defendant contends that such confession was not voluntarily given and therefore was admitted into evidence in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. We do not agree with this contention.

■■ The record indicates that defendant had been advised of his rights and acknowledged his understanding of these rights prior to giving his statement to the Oak Park Police. Once the defendant has been informed of his rights and indicates that he understands those rights, his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them. *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.

Defendant contends that the trial court erred in denying defendant a psychiatric examination and competency hearing. On October 5, 1976, defendant filed a petition for psychiatric examination. This petition alleged, *inter alia,* that defendant's attorney noticed that defendant (1) appeared disoriented, (2) complained of headaches, (3) acted as if suffering from great emotional distress and in need of psychiatric treatment, (4) was unable to see his family due to solitary confinement, causing defendant great emotional strain, and (5) would have an emotional breakdown, rendering defendant unable to stand trial and unable to understand the charges against him. The petition thereafter recommended that the trial court appoint a psychiatrist to conduct an evaluation and examination of defendant. Defendant's petition was denied. We agree with this denial.

Unfitness to stand trial is defined in section 5—2—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(a)) as follows:

> "For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:
> 1) to understand the nature and purpose of the proceedings against him; or
> 2) to assist in his defense."

Only when a bona fide doubt of defendant's fitness to stand trial is raised shall a determination of fitness be made. Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(c).

■■ We also note that the granting of a psychiatric examination or competency hearing is a matter within the discretion of the trial judge. (*People v. Skorusa* (1975), 55 Ill. 2d 577, 304 N.E.2d 630; *People v. Logan* (1977), 50 Ill. App. 3d 460, 365 N.E.2d 304.) An assertion by counsel that defendant cannot cooperate with counsel does not of itself raise a bona

fide doubt of competency. *People v. Slaughter* (1970), 46 Ill. 2d 114, 262 N.E.2d 904.

We will address ourselves to the merits of the petition and the time at which defendant's petition was injected into the proceedings. Defendant's petition essentially alleged that defendant was on the verge of emotional collapse. The petition did not allege facts which would indicate that, at the time the petition was filed, defendant was unable to understand the nature and purpose of the proceedings against him or assist in his defense.

Assuming that defendant's petition did indicate that defendant was suffering from some mental disturbance this fact would not necessarily raise a bona fide doubt as to defendant's ability to understand the nature and purpose of the proceedings against him or to assist in his defense. This particularly true where, as here, the defendant manifested to the court a level of participation inconsistent with a claim of unfitness. See *People v. Davis* (1978), 65 Ill. App. 3d 580, 382 N.E.2d 594. The trial court expressly commented upon the degree to which defendant was able to participate in this case:

> "THE COURT: Let the record show that the defendant is making these statements in open Court, that prior to the time that this statement has been made by the defendant in open Court, the Court has had occasion to observe the defendant on many occasions in which he appeared before this Court. He has seen the defendant participate with his counsel during arguments on the motions that he has filed, and he has noted the defendant reading the briefs and matters that were at the counsel table. He has seen and observed the defendant during an interrogation of certain witnesses on the stand. Turned to his counsel and conferred with him in matters that were being presented to the Court."

Our reference to the proceedings below clearly indicates that the trial court had ample opportunity to observe defendant. The court determined that defendant's participation in the case at bar was inconsistent with his assertion of incompetency.

Defendant brings to our attention the cases of *People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239, and *People v. Foster* (1977), 56 Ill. App. 3d 22, 371 N.E.2d 961. *Burson* is factually dissimilar to the case at bar. *Burson* considered a question of sanity at the time of trial where the record reflected defendant's possession of a persecution complex, delusions of grandeur and irrational behavior. *Foster* is likewise inapplicable to the case at bar. In *Foster* the appellate court stated that defense counsel sufficiently raised, by motion, the question of competency and that the trial court erred in not conducting a fitness

hearing. We have indicated that, in the case at bar, defense counsel's petition merely alleged that, at some future date, defendant might suffer mental collapse. This petition did not raise a bona fide doubt of competency.

We also note that defendant's petition was filed just prior to trial. This late filing suggests that the petition was utilized as a delay tactic by the defense. Defendant never objected to the commencement of the aforementioned hearing upon the motion to suppress. Apparently, defendant was merely interested in delaying trial.

The trial court viewed defendant's competency contentions as a delay tactic. This belief is well captured in the following statement by the court:

> "THE COURT: From what I have observed, counsel, from his demeanor, and as I have stated, and I don't want to repeat myself.
>
> MR. GRAUER: I appreciate that.
>
> THE COURT: Ten or twelve times. And I observed him with you and his discussion of the matters with you in the Courtroom. As I have stated that, and I will reiterate it again. That it is merely a delay tactic on the part of the defendant. There is no bonafide showing as to why these matters that you have stated should not— should in any way delay the proceedings before this Court."

Due to the fact that there was no substantive merit to defendant's petition and the fact that defendant's petition was clearly filed as a delay tactic, we believe that the trial court was correct in denying the petition. We agree that no bona fide doubt of competency was raised.

Finally, defendant contends that the 100-200 year sentence entered upon the conviction for attempt murder was excessive. We note at this point that this court will not disturb a sentence imposed by the trial court unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose (*People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367) and the trial court abused its discretion in entering such sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

The record reflects that the trial court, in imposing sentence, considered the goals of deterrence, rehabilitation and the protection of society from violent individuals. The court indicated that defendant showed no remorse. The court also characterized defendant's criminal act as a cold, calculated and senseless one.

At oral argument defendant referred to *People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268, in support of his contention regarding the length of his sentence. In *Williams* the defendant was charged with the identical crimes involved in the case at bar. Defendant was sentenced to 40-140 years imprisonment. The appellate court reduced this sentence

to a 15-45 year term. While there may be some similarities between that case and the case at bar we do not believe that *Williams* compels us to reduce defendant's sentence.

■ We find no reason to disturb the sentence imposed by the trial court. It was in a superior position to judge the demeanor of the defendant, his credibility, general moral character, mentality, social environment, habits and age. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN and BROWN,[1] JJ., concur.

[1] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.