THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE BAYLOR, Defendant-Appellant.

Second District    No. 81—751

Opinion filed December 28, 1982.

G. Joseph Weller and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellant.

Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Lawrence Baylor, was found guilty of attempted murder (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(a) and 9—1(a)(1)) after trial by jury and was sentenced to a term of 30 years imprisonment. He appeals, contending: (1) improper argument by the prosecutor was prejudicial; (2) the trial court abused its discretion in imposing the maximum term sentence of 30 years; and (3) cumulative errors denied him a fair trial.

A North Chicago police officer testified at trial that at 1:30 a.m. on May 1, 1981, he was patrolling in an area known as the "strip"

near the Great Lakes Naval Base. He had stopped a car for a minor traffic violation in which two black men and a white man were riding. While seeking to determine the ownership of the car, the officer received a radio call regarding another matter in which someone had been injured. He then advised the two black men to return to Chicago in the car and the white man to go back to the base. At trial, the officer identified defendant as the driver of the car.

James Egan testified he was in the Navy on May 1, 1981, stationed at Great Lakes Naval Base. He had been paid on April 30 and, while visiting bars near the base, met an acquaintance named Sikes who introduced him to defendant. Egan asked for a ride back to the Sheraton Hotel and as the three men were driving they were stopped by an officer. The officer told Egan to go back to the base and he walked off in that direction. Shortly thereafter the men drove up to him in the car and Egan rejoined them. After driving around for about an hour, the car stopped on a road in a dark area near an apartment complex. The driver went back to the trunk and opened it and Egan followed him.

The driver, who Egan identified in trial as defendant, removed an object from the trunk and pointed it at Egan telling him to drop his wallet. Egan then attempted to kick defendant with his right foot and was shot; he turned and started to run, then lost consciousness. A doctor testified Egan had been injured by a shotgun fired from close range and sustained a four-inch wide chest wound and loss of his left kidney. There were pellet wounds to the stomach, colon, diaphragm and lung and a colostomy was performed; further surgery will be required.

Officers Steven Anderson and Timothy Neimietz testified they interviewed defendant on May 5, 1981, and, after advising him of his *Miranda* rights, defendant signed a rights waiver form and subsequently signed a written confession. A motion to suppress the confession was heard during trial outside the presence of the jury. Defendant there testified he signed the confession because one of the officers yelled at him and he was grabbed by the neck, struck and his head hit against the wall. Defendant also stated he was threatened with a 20 to 40 year sentence if he did not sign the confession and thought he would "get off" if he did so. The officers also testified denying the use of force or threats against defendant and the trial court denied the motion to suppress.

Officers Anderson and Neimietz testified before the jury that defendant told them he knew the end of the month was payday for the Navy and he could get money by robbing a sailor. He and Lawler

Sikes borrowed a car and drove to Waukegan from Chicago after stopping at defendant's home to put his sawed-off shotgun in the trunk of the car. In Waukegan they picked up a sailor and later were stopped by police; when the police left the sailor got back in the car. The three men drove around; then defendant found a dark road and got out of the car, saying he was going to get marijuana the sailor wanted. At the trunk of the car defendant pointed the shotgun at the sailor and told him to drop his wallet; when the sailor backed up quickly, defendant said he pointed the gun at his abdomen and pulled the trigger. Defendant put the shotgun back in the car trunk and drove to a friend's house in Waukegan, returning to Chicago the next day. Although it was not included in the written confession, Office Neimietz testified defendant had also said, "I did it on purpose."

Defendant testified in trial that he and Sikes came to North Chicago on the night of April 30 to meet friends. They stopped at a club where a man approached and inquired if defendant wanted to sell some marijuana. After leaving the club with the man they were stopped by police who told defendant to return to Chicago and the sailor to return to the base. Defendant testified he next saw Egan in court and had not attempted to rob him or shoot him. Defendant also testified he had made the statement to Officers Anderson and Neimietz and signed the typewritten confession involuntarily because of physical and mental force applied to him.

■■ Defendant contends first that in argument the assistant State's Attorney's comments that defendant had presented inconsistent defenses was improper and prejudicial. Defendant failed, however, to preserve that issue for review by first raising it in his post-trial motion for consideration by the trial court. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093; *People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739, 743.) Nor does the fact defendant objected to the alleged erroneous argument when made in trial preserve it for review when such claim of error was not also included in his post-trial motion. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181, 415 N.E.2d 1027, 1029-30; *Wilson v. Clark* (1981), 84 Ill. 2d 186, 189, 417 N.E.2d 1322, 1324, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.

We need not consider whether this issue may be reviewed under the plain error doctrine of Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)), although waived, as in our view the disputed argument was fair and responsive comment directed to the evidence and argument made by defendant's counsel.

■■ Defendant had testified he was not present during the com-

mission of the offense and his counsel argued to the jury that, even if he had been present, under the evidence it was not shown defendant had the requisite intent to kill necessary to his conviction. Reasonably enough, the prosecutor pointed out in final argument that the jury was being tendered inconsistent defenses from which to choose. Where defendant's argument invites or provokes an obvious response from the prosecutor, he may not complain he was thereby prejudiced. *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, 677, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1073-74, 401 N.E.2d 1069, 1074.

■ Defendant next contends that in imposing the maximum 30 year sentence of imprisonment for attempted murder (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3)), the trial court abused its discretion by failing to consider or give adequate weight to the evidence of defendant's potential for rehabilitation as is required by the constitution (Ill. Const. 1970, art. I, sec. 11).

At the sentencing hearing the presentence report disclosed that defendant was 20 years of age, a high school graduate and was engaged to be married to the mother of his two children. He had served for 15 months in the Navy, receiving a "General Discharge under Honorable Conditions," and had been employed for about three months as a factory worker prior to his arrest. Defendant had no record of prior juvenile adjudications or criminal convictions. The State's Attorney sought imposition of an extended term sentence in excess of 30 years, pursuant to section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)), arguing that the severe injuries inflicted by defendant upon his victim were indicative of wanton cruelty. The trial court concluded, however, it could not impose an extended term under the language of the statute.

Before sentencing defendant the trial judge commented he had reviewed the factors in mitigation and aggravation set forth in sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), the presentence report describing defendant's personal background and history and the evidence at trial of the circumstances of the offense. The court noted particularly the serious injuries sustained by the victim and the testimony of the police officer that defendant had stated the gun did not go off accidentally, but that he did it on purpose. The court noted defendant had placed a loaded shotgun in the car trunk before going to Waukegan, then removed it to shoot the victim, concluding he in-

tended to do so.

Defendant argues that in imposing the maximum sentence the trial court "resigned to total retribution" a person whose background evidences that he has a chance to be restored to useful citizenship and ignored his rehabilitative potential. He urges the sentence be reduced as have others involving heinous crimes. *People v. Goodwin* (1980), 83 Ill. App. 3d 203, 403 N.E.2d 1051; *People v. Goodman* (1981), 98 Ill. App. 3d 743, 424 N.E.2d 663, *appeal denied* (1981), 85 Ill. 2d 579; *People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268; *People v. Smith* (1977), 50 Ill. App. 3d 320, 365 N.E.2d 558, *cert. denied* (1978), 435 U.S. 1008, 56 L. Ed. 2d 390, 98 S. Ct. 1880; *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491; *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 344 N.E.2d 724.

Reviewing courts have the power under Supreme Court Rule 615(b)(4) (73 Ill. 2d R. 615(b)(4)) to reduce a sentence if the trial court abused its discretion in imposing it. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348.) We are mindful, however, that the trial judge is in a better position to determine what is a suitable sentence than is a reviewing court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883.) Here the trial court did take into consideration the statutory factors together with evidence of defendant's premeditation, deliberate conduct and the devastating injuries to his victim resulting therefrom. The judge obviously concluded that these matters heavily outweighed the evidence, also considered by him, that defendant had not previously been convicted of criminal conduct. Under the circumstances of this case, we cannot say the trial court abused its discretion in sentencing defendant. See *People v. Jenkins* (1978), 67 Ill. App. 3d 565, 570, 384 N.E.2d 1348, 1352; *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

Defendant also contends he was denied a fair trial because of other cumulative errors.

■ He argues first his conviction by an all-white jury violated his right to trial by a jury comprised of a fair cross-section of the community. However, as no evidence was presented of the systematic exclusion of blacks from the jury, defendant's constitutional rights were not infringed. *People v. Butler* (1970), 46 Ill. 2d 162, 164, 263 N.E.2d 89, 90; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 107, 413 N.E.2d 1330, 1333-34, *appeal denied* (1981), 83 Ill. 2d 571.

■■ Defendant further argues that the trial court erred in denying the motions to suppress his confession and his in-court identification by the victim which was alleged to have been tainted by a suggestive pretrial photographic identification. We have considered

the evidence upon which the trial court denied defendant's motions and conclude it did not err. The court found from the evidence that defendant was fully advised of his *Miranda* rights and understandingly waived them without coercion by the police officers. In doing so the court determined the credibility of the witnesses in resolving the factual disputes, and we cannot say its conclusion was contrary to the manifest weight of the evidence. It is also apparent that the victim's in-court identification of defendant was made independently of the prior photo identification. The victim was with his assailant for over an hour and had ample opportunity in that time to observe him under well-lighted conditions.

■ Nor do we find merit in defendant's final argument he was denied effective assistance of counsel. The question presented in whether counsel was actually incompetent in carrying out her duties to her client to his substantial prejudice. (*People v. Lewis* (1981), 88 Ill. 2d 129, 154, 430 N.E.2d 1346, 1357-58, *cert. denied* (1982), 456 U.S. 1011, 73 L. Ed. 2d 1308, 102 S. Ct. 2307; *People v. Lovitz* (1982), 101 Ill. App. 3d 704, 710, 428 N.E.2d 727, 731.) Defendant's attorney ably presented his defense and sought to suppress or reduce the effect of the State's evidence. Counsel's failure to include the "all-white jury" issue in the post-trial motion does not suggest incompetence; as we have noted, it was without substance.

Accordingly, the judgment of the circuit court will be affirmed.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.