THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE GRAY, Defendant-Appellant.

First District (1st Division)   No. 82—2045

Opinion filed February 6, 1984.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Maureen A. Dahlke, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

Lawrence Gray (defendant) was indicted for murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1), concealment of homicidal death (Ill. Rev. Stat. 1981, ch. 38, par. 9—3.1) and obstructing justice (Ill. Rev. Stat. 1981, ch. 38, par. 31—4). The victim was the 2½-year-old daughter of defendant's wife. After a bench trial, defendant was convicted of the lesser included offense of involuntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—3), concealment of homicidal death, and obstructing justice.

Defendant was sentenced to concurrent sentences of five years in prison for involuntary manslaughter and three years for obstructing justice. Defendant also received a nine-year extended-term sentence for concealment of homicidal death to run consecutively to the other sentences. Defendant appeals.

The evidence establishes that after defendant's wife and her child came to live with defendant in September of 1980, the child sustained injuries such as laceration of her right forehead, a large burn on her right forehead, swollen jaws, contusions on her back and bruises on her legs and back.

On February 15, 1981, defendant told police he and his wife had been robbed by two men who had taken the child and fled. Approximately 48 hours later, defendant's wife told police the robbery and kidnap story was a hoax and that she and defendant had actually placed the child's body in a garbage bag and discarded it in an abandoned building.

Defendant admitted to police he had struck the child twice, once causing the victim to fall and strike her head against a door so as to cause bleeding.

At trial, defendant denied these admissions. He testified his wife had taken the child into the bathroom of their home, and then told

defendant something was wrong with the child. Defendant stated he found the child lying on the floor, unconscious and bleeding from a wound in her head. Defendant also testified he saw his wife twice pick the child up and drop it from shoulder height into the bathtub, causing the child's head to strike the edge of the bathtub.

Defendant testified he attempted artificial resuscitation without result. Defendant placed, or allowed the child to be placed, on a radiator, and he and his wife went to visit his mother. When they returned, they found the child's ear and the right side of her face had been burned by the radiator. Defendant and his wife placed the child and her bloody clothes in  plastic garbage bags and discarded the bags in abandoned buildings nearby.

The State's chief medical expert, Dr. Robert Stein, performed the autopsy on the child. He identified the cause of death as severe blunt trauma to the head and face coupled with third degree burns to the side of the face. Dr. Stein testified there was a tremendous, markedly diffused hemorrhage under the scalp. He stated such a subgaleal hemorrhage was consistent with severe blunt trauma to the head and face occurring before death. There was no skull fracture. This would have been expected if the child had been dropped from shoulder height into a bathtub.

Dr. Stein testified the injuries to the face resulted from direct blunt trauma. They were not consistent with a single blow or with being dropped on her head in a bathtub. The child's lips were bruised and swollen, and there was an incised wound, caused by a sharp object, above the left eye. Both eyes had subconjunctival hemorrhages and were black and blue.

Two of defendant's expert witnesses testified that, in their opinion, the hemorrhage under the scalp was caused by incisions made during the autopsy and not by blunt trauma. Each expert admitted on cross-examination that such a hemorrhage is consistent with blunt trauma to the head. None of defendant's experts was present during the autopsy.

Another of defendant's experts testified the facial swelling and discoloration occurred after death and, in his opinion, resulted from the seepage of blood from the hemorrhage under the scalp. However, another of defendant's experts conceded that the facial injuries were consistent with direct blunt trauma to the head and face. Another expert, testifying for the State in rebuttal, stated that the facial injuries were inconsistent with seepage from a hemorrhage under the scalp. She concluded the injuries were inflicted while the child was alive and were the result of child abuse.

## I

Defendant urges the evidence was insufficient to prove him guilty of involuntary manslaughter beyond a reasonable doubt. In the instant case, there are conflicts in the evidence. Defendant admitted to the police that he struck the child twice so that she fell and struck her head upon a door. At trial defendant denied he struck the child but he testified his wife bathed the child to wash off blood. Defendant testified his wife dropped the child from shoulder height into the bathtub two times. However, the State's expert testified the injuries disclosed at the autopsy were not consistent with the victim having been dropped into the bathtub because there was no evidence of a skull fracture.

Also, as could be expected, there was a conflict between the testimony of the experts for the People and those for the defense. The only expert who attended the autopsy was Dr. Stein, who actually performed it. It is conceded that no expert called by the defendant attended the autopsy or saw the body of the victim. They based their opinions on photographs. One expert for the defendant admitted that no qualified pathologist would base an opinion solely upon photographs.

In a situation of this type, we are bound by the established principle that this court cannot accept a conflict in the evidence as sufficient to raise a reasonable doubt of guilt. In all situations in which experts are called to testify, their comparative credibility and the weight to be accorded to their testimony "is a matter for the trier of fact to determine." *People v. Platter* (1980), 89 Ill. App. 3d 803, 817, 412 N.E.2d 181.

In addition, whether or not expert testimony is involved, this court has consistently held that it is the prerogative of the trial court to ascertain the truth. This court may not substitute its own feeling or judgment for the result reached by the trier of fact where the outcome of the case depends upon the weight of the evidence or the credibility of the witnesses. (*People v. Kline* (1982), 92 Ill. 2d 490, 505, 442 N.E.2d 154, citing *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) It has been repeatedly held that a " ' "*** finding of guilty will be disturbed only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. [Citation.]" ' " *People v. Kline* (1982), 92 Ill. 2d 490, 506, quoting *People v. Durley* (1972), 51 Ill. 2d 590, 593, 283 N.E.2d 882. See also *People v. Powell* (1978), 72 Ill. 2d 50, 65, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S. 907, 59 L. Ed. 2d 455, 99 S.

Ct. 1214.

We conclude that the finding of guilty is necessarily affirmed by this court.

## II

Able counsel for defendant urges that the trial court erred when it imposed a consecutive sentence for the offense of concealment of homicidal death and also increased that sentence by imposing an extended term thereon. We agree with this contention.

■ In our opinion, this type of sentence constitutes an improper augmentation of the sentence. Concealment of a homicidal death is a Class 3 felony. The penalty for this offense is imprisonment with a minimum of two years and a maximum of five years. However, this sentence is doubly augmented by the extended term and also by being made consecutive to the other sentences. This result is completely unfair and excessive. In effect, it is closely analogous to double augmentation of a charge of battery by use of a weapon to result in aggravated battery and then by addition of the charge of armed violence. See *People v. Van Winkle* (1981), 88 Ill. 2d 220, 222, 430 N.E.2d 987, citing *People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627.

■ Furthermore, the sentence as pronounced would impose a term of 14 years contrary to the express limitation provisions of the pertinent statute. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(c)(2).) We we will therefore separately consider the propriety of an extended-term sentence and also requiring the sentence to be consecutive.

The Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2)) provides for an extended term:

> "When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

It has been held "that the extended-term provision, since it is a penal statute, should be strictly construed." (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674.) In *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810, *cert. denied* (1981), 449 U.S. 1127, 67 L. Ed. 2d 115, 101 S. Ct. 948, this court dealt with this provision as it pertained to the crime of concealment of a homicidal death. The court held that imposition of enhanced sentences for concealing the bodies was error and reduced two sentences to the maximum term of five years. The court pointed out that exceptional brutal or heinous behavior in that situation "would occur if, for instance, the corpse was intentionally dismembered." 82 Ill. App. 3d 639, 651. See

also *People v. Fieberg* (1982), 108 Ill. App. 3d 665, 668-71, 439 N.E.2d 543.

In *People v. Evans* (1981), 87 Ill. 2d 77, 88, 429 N.E.2d 520, the supreme court rejected an extended term for "actions committed under a subjective belief, albeit unreasonable, that the actions were in self-defense." The court then added (87 Ill. 2d 77, 88-89, citing *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 651):

"As the appellate court noted, section 5—8—2 of the Unified Code of Corrections was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence."

We have therefore concluded that imposition of the extended term for this offense was improper. The sentence for concealment of a homicidal death is accordingly modified by being reduced to the maximum term of five years.

The next issue is whether it was proper to make the sentence for this same felony consecutive to the other terms imposed. The Unified Code of Corrections provides (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b)):

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

This court has not hesitated to modify sentences from consecutive to concurrent where the circumstances so require and when we find that protection of the public is not served by the consecutive sentence. (See *People v. Griffin* (1982), 113 Ill. App. 3d 184, 193-94, 446 N.E.2d 1175.) In addition, it has been held that consecutive sentences should be sparingly imposed. *People v. Foster* (1975), 32 Ill. App. 3d 1009, 1013, 337 N.E.2d 90.

We are constrained to state that the crime, or series of crimes, here committed against a defenseless child are an affront to civilized behavior and a sad commentary upon human nature. However, repulsive and tragic as the situation here may be, we are obliged to follow the dictates of the statute and to impose consecutive sentences only when we are convinced that consecutive terms of punishment are "required to protect the public from further criminal conduct by the defendant ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) In the case at bar, a good part of the alleged conduct of the defendant appears from statements allegedly made to the police by his wife. It

must be remembered that she was a willing participant in the situation here until her conscience was goaded by fear of police action. Also, it must be remembered that defendant is a young man in his early twenties. This is the first criminal conduct with which he has ever been associated. It must be conceded that he has an excellent past record.

We are not dealing here with punishment for involuntary manslaughter but with augmentation of the punishment for concealment of a homicidal death. It seems to us that the trial court properly expressed his anger and disgust at the manner with which the child was treated. However, when the entire situation is carefully and impartially reviewed we must necessarily come to the conclusion that the mistreatment and death of the child are far more reprehensible than the manner in which the body was treated. In addition, it is too late to protect the innocent child from the miserable consequences of cruelty, but it is our duty to consider not our emotional outrage but compliance with the statute pertaining to a consecutive sentence. Particularly in view of the lack of criminal record of this defendant, we are impelled to conclude that there is not a sufficient showing here that a consecutive sentence is necessary for the protection of the public.

In this regard, we will cite *People v. Soloman* (1983), 116 Ill. App. 3d 481, 488, 451 N.E.2d 953, as reflecting the type of defendant with a lengthy criminal record who was properly sentenced to consecutive terms. Also, in our recent decision in *Griffin* we cited a number of pertinent authorities to the effect that a consecutive sentence should be "imposed sparingly" and is "rarely appropriate." (*People v. Griffin* (1982), 113 Ill. App. 3d 184, 193.) In that opinion, we also cited other cases to the effect that there must be a sufficient showing that the conduct of the defendant was such that a consecutive term was necessary for protection of the public. We conclude that the sentences imposed upon defendant should be made concurrent rather than consecutive.

We do not find that with these modifications the sentence of this defendant is disparate from the sentence given his wife. She has been found guilty in an *Anders* proceeding and sentenced to concurrent terms of five years for concealment of the homicidal death and three years for obstructing justice. See *People v. Kline* (1982), 92 Ill. 2d 490, 507.

Accordingly the sentences herein are modified by eliminating the extended term for concealment of the homicidal death and further modifying the sentences for all offenses to be concurrent rather than consecutive. In all other respects the judgment appealed from is af-

firmed. The cause is remanded to the trial court for the issuance of a corrected *mittimus*.

Affirmed in part; sentences modified and cause remanded with directions.

McGLOON and CAMPBELL, JJ., concur.