THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY POWELL, Defendant-Appellant.

First District (1st Division) No. 85—2598

Opinion filed August 24, 1987.

Thomas Peters and William P. Murphy, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Bonnie Meyer Sloan, and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Jerry Powell, appeals from the judgment of the circuit court of Cook County which resulted in his imprisonment for the offenses of attempted murder, aggravated battery and armed violence. On appeal, defendant contends that: (1) the 30-year sentence for the

attempted murder of Mona Soloky is excessive; (2) the 15-year consecutive sentence for the attempted murder of Pete Hakanson should be modified to run concurrently with the sentence for the attempted murder of Mona Soloky; (3) the trial court erred in not instructing the jury as to the definitions of "intent" and "knowingly"; and (4) he received ineffective assistance of counsel which prejudiced his defense.

Defendant suffers from a form of dwarfism called Dermatolysis, which he was diagnosed as having soon after birth. Despite his ailment, he graduated from high school in 1972, and thereafter took several college-level courses. After high school, he worked for Aetna Ball Bearing Company and Rotary Seal Corporation. In August 1975, he started working for Wells Manufacturing Company (Wells) in Skokie. He received several promotions throughout his years there.

On February 6, 1985, a meeting was held at Wells, at about 9 a.m., concerning defendant's recent decline in job performance. During the 12-month period prior to February 6, defendant's errors had generated a monetary loss to Wells of approximately $8,000 to $9,000, excluding loss of man-hours and plant time. Present at the meeting were Robert Engelhardt, vice-president of employee relations; Mona Soloky, chief chemist, Pete Hakanson, chief metallurgist, and defendant. Ms. Soloky read defendant a list of mistakes he had made. Engelhardt suggested defendant either accept a shift change or take a three-day suspension starting the following day. Defendant opted for the suspension.

After the meeting, defendant went back to work quite upset. He stated he was sick and left work at about 10:30 a.m. When defendant arrived home, he took a gun and contemplated suicide. Instead, he loaded the gun, placed several bullets in his pocket and returned to Wells. Defendant testified that as he returned to Wells he did not intend to shoot anybody.

At Wells, defendant went to Engelhardt's office, but Engelhardt was not there. Defendant then went to Ms. Soloky's office, said "Mona," and shot her in the head. Defendant next went to Hakanson's office, said "Pete," and shot him in the head.

Defendant then started to walk down the hallway, but Dick Zirbes ran out after him, tackled him and attempted to take the gun away from him. During the struggle defendant shot Zirbes in the head. Defendant testified that the shooting was an accident.

Defendant next heard Hakanson call out, "Please, someone help me. Please, someone help me." Defendant went back into Hakanson's office and fired the gun again; the bullet missed Hakanson and hit the top of his bookshelf. Defendant testified that he "wanted to leave him alone, but *** had to hurt him again *** [because] [h]e made me hurt

Mona." Defendant then looked for the plant supervisor, but could not find him.

After the shootings, defendant handed the gun to Inez Arroyo, Engelhardt's secretary, and handed John Fuller, the employee relations supervisor, his bullets. Ms. Arroyo seated defendant in a chair by her desk, and Engelhardt came and took the gun.

Thereafter, the Skokie police arrived, arrested defendant and took him to the police station. Defendant was advised of his *Miranda* rights by Detective Frederick Murray. Defendant told the detective that he was "tired of being fucked around by people," which at trial he denied saying; he was tired of being pushed around and he was going to make them pay; that he had killed them at least five times over in his dreams; and that Dick Zerbes was a "fucking fool, a stupid fool" because he got in the way and tried to be a hero, which defendant also denied saying.

Although none of defendant's victims died as a result of the shootings, they were quite seriously injured. The bullet which hit Ms. Soloky traversed her brain and ended up toward her back. She now has problems speaking, seeing, comprehending and moving her right side. She is blind in her left eye and 50% blind in her right eye. She can speak only in short, relatively uncomplicated sentences, and probably will never be able to speak coherently.

The bullet which hit Hakanson hit him just under his right eye and lodged in the back of his neck. He now has a drooping eyelid, a smaller pupil and his jaw is damaged.

The bullet which hit Zirbes blew out his right eye.

The trial court ordered a psychiatric examination of defendant due to his sudden violent behavior, and he was found unfit for trial. Subsequently he was was found fit; but Dr. Riefman, the attending psychiatrist, found defendant to be "genuinely remorseful"; that defendant "becomes tearful and cries when he talks about the crime"; and that defendant's severe depression could render him unfit in the future. In addition, defendant told Dr. Earvin, a psychologist who evaluated him, that he never intended to hurt Ms. Soloky and just wanted her to like him. Dr. Earvin noted that defendant began to sob uncontrollably when he talked about Ms. Soloky, and that defendant was an "unaggressive, basically conforming, dependant [sic] young adult."

Following a jury trial, defendant was found guilty of two counts of attempted murder, four counts of aggravated battery, and four counts of armed violence, relating to the injuries inflicted on Ms. Soloky and Mr. Hakanson. Defendant was found not guilty of the charges relating to Mr. Zirbes' injuries. The trial court sentenced defendant to 30 years

on the attempted murder of Ms. Soloky and 15 years on the attempted murder of Mr. Hakanson, the sentences to run consecutively.

Defendant contends that the 30-year sentence, the maximum for attempted murder, is excessive. He argues that the trial court, in imposing the sentence, improperly relied on its finding that defendant had acted intentionally in shooting Ms. Soloky. Defendant maintains that specific intent is presumed to exist based on the finding of guilty of attempted murder, thus it cannot be a factor in aggravation. We agree.

■■ In the case at bar, in imposing the sentence, the court relied in aggravation primarily on its finding that defendant's course of conduct on February 6, 1985, "was deliberate, it was calculated and was intended to take the life of the people that he shot. *** [It] wasn't an attempt, it was in fact to kill them, ***." The court's reliance was improper. A person commits attempted murder when he has the "specific intent to commit murder, to kill someone. *** [S]pecific intent to kill is required." (*People v. Jones* (1979), 81 Ill. 2d 1, 8-9, 405 N.E.2d 343, citing *People v. Trinkle* (1977), 68 Ill. 2d 198, 201-04, 369 N.E.2d 888.) Because intent to kill is a material element of the offense of attempted murder, it may not be relied upon as a factor in aggravation, especially as the primary factor. See *People v. Saldivar* (1986), 113 Ill. 2d 256, 271-72, 497 N.E.2d 1138; *People v. Tompkins* (1987), 155 Ill: App. 3d 380, 383, 508 N.E.2d 481.

Defendant additionally argues that the trial court, in imposing the 30-year sentence, ignored the many mitigating factors which existed because had the court considered any of them his sentence would have been less than the maximum. Defendant maintains that the following factors in mitigation warrant a reduced sentence: defendant was 33 years old at the time of the crime; he had been working for 9½ years at the same job, where he received merit promotions; he had a stable family life; he was a quiet, withdrawn, passive person; he had no history of delinquency or criminal activity; he was remorseful; a long prison sentence will diminish the hopes that defendant will be rehabilitated; it is doubtful he can survive the rigors of prison life due to his disease; the criminal conduct is unlikely to recur because due to his physical affliction he placed an inordinately high value on his job and his friends and associates from work; and defendant's character and attitudes indicate he is unlikely to commit another crime.

■■ In sentencing a defendant it is the trial court's duty to take into account all factors, both in aggravation and mitigation (see Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2) and to balance those factors against each other. Thereafter, it is within the

court's discretion to determine the appropriate sentence. (See *People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 790-91, 483 N.E.2d 944, *appeal denied* (1985), 111 Ill. 2d 558; *People v. Baylor* (1982), 111 Ill. App. 3d 286, 291, 443 N.E.2d 1137, *appeal denied* (1983), 93 Ill. 2d 543.) The existence of mitigating factors does not automatically obligate the court to reduce the sentence from the maximum. A sentencing court need not recite and assign value to each factor in mitigation upon which it is relying. It is sufficient for the court to state that it has considered the evidence adduced at trial. (*People v. Baker* (1983), 114 Ill. App. 3d 803, 811, 448 N.E.2d 631.) In addition, where a sentencing judge articulates only factors in aggravation, but mitigating evidence is before the court, it is presumed the judge considered the factors in mitigation. 114 Ill. App. 3d 803, 811, 448 N.E.2d 631.

■ In the case at bar, the trial court stated that it had considered the presentence investigation, the medical reports and records, and other reports. It also said that it had considered the factors in aggravation and mitigation, citing the appropriate sections of the statute. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) Therefore, the court did not err in failing to mention and assign value to each mitigating factor. Because such evidence was before the court and because the court considered factors in aggravation, it presumably considered all of the evidence in mitigation even though it sentenced defendant to the maximum term.

■ Defendant further alleges that the trial court failed to consider defendant's potential for rehabilitation and restoration to useful citizenship as required by article I, section 11, of the 1970 Illinois Constitution. We disagree. Where the sentencing court examines the presentence report, as it did in the instant case, it is presumed that the court took into account the defendant's potential for rehabilitation. *People v. Shumate* (1981), 94 Ill. App. 3d 478, 484-85, 419 N.E.2d 36, *appeal denied* (1981), 85 Ill. 2d 573.

For the foregoing reasons, we reverse defendant's 30-year sentence and remand this case to the trial court for resentencing without the court's taking into account the improper aggravating factor of defendant's specific intent to kill.

■ Defendant next contends that the consecutive sentence should not have been imposed. He argues that the court incorrectly determined that it could impose the consecutive sentence based on the severity of the victims' injuries, without deciding whether the sentence was necessary to protect the public from further criminal conduct. We agree.

Generally, it is within the trial court's discretion whether to impose

a consecutive or concurrent sentence. (*People v. Hicks* (1984), 101 Ill. 2d 366, 374-76, 462 N.E.2d 473; *People v. Peebles* (1984), 125 Ill. App. 3d 213, 223, 465 N.E.2d 539, *appeal denied* (1984), 99 Ill. 2d 533.) A court's decision will not be disturbed absent an abuse of that discretion. (*People v. Hicks* (1984), 101 Ill. 2d 366, 374-76, 462 N.E.2d 473; *People v. Coleman* (1980), 91 Ill. App. 3d 646, 654, 415 N.E.2d 553.) However, a court may not impose a consecutive sentence unless "it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b).) The failure of a court to recite the statutory language when imposing a consecutive sentence does not automatically require reversal, although it would be the better practice for the court to state the language. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473; *People v. Pittman* (1982), 93 Ill. 2d 169, 177-78, 442 N.E.2d 836.) The record need only show that the court believed the sentence was necessary to protect the public from further criminal conduct by the defendant. *People v. Steppan* (1985), 105 Ill. 2d 310, 322, 473 N.E.2d 1300; *People v. Logan* (1983), 117 Ill. App. 3d 753, 759, 453 N.E.2d 1317, *cert denied* (1987), ____ U.S. ____, 94 L. Ed. 2d 523, 107 S. Ct. 1352.

Moreover, consecutive sentences should be imposed sparingly. (*People v. Gray* (1984), 121 Ill. App. 3d 867, 872, 460 N.E.2d 354; *People v. Zadel* (1979), 69 Ill. App. 3d 681, 683, 387 N.E.2d 1092.) "This court has not hesitated to modify sentences from consecutive to concurrent where the circumstances so require and when [it has found] that protection of the public is not served by the consecutive sentence." (*People v. Gray* (1984), 121 Ill. App. 3d 867, 872, 460 N.E.2d 354.) Furthermore, it is the court's duty to consider, not emotional outrage at the circumstances of the crime, but compliance with section 5—8—4(b) of the statute. 121 Ill. App. 3d 867, 873, 460 N.E.2d 354.

In the instant case, the fact that the trial court did not state the statutory language in imposing the consecutive sentence is not fatal to the court's decision. However, the record fails to show that the court was of the opinion that the sentence was necessary to protect the public from further criminal acts by defendant, and it cannot be implied merely from the imposition of the sentence that the court was of such an opinion. (*People v. Pittman* (1982), 93 Ill. 2d 169, 177, 442 N.E.2d 836.) All that the court stated in imposing the consecutive sentence was that it read the entire statutory provision on concurrent and consecutive sentences, that defendant's conduct was "in fact to kill" Mr. Hakanson and Ms. Soloky, and that the injuries defendant inflicted on his victims were so severe that their lives will never be the same.

■ Thus, the present case is similar to *People v. Gray* (1984), 121 Ill. App. 3d 867, 460 N.E.2d 354, where this court modified a consecutive sentence to run concurrently, finding that the crime the defendant had committed was "repulsive and tragic"; however, the defendant was in his early twenties, it was his first involvement in criminal conduct, and he had an excellent past record. (121 Ill. App. 3d 867, 872-73, 460 N.E.2d 354.) Similarly, in the case at bar, the defendant was only 33 years old at the time of the crime, he had never before been involved in criminal conduct and his past work and personal record were very good. We conclude that because there is not sufficient evidence in the record to show that the consecutive sentence was necessary to protect the public from further criminal conduct by defendant, the 15-year sentence should be made concurrent rather than consecutive.

■ Defendant's next contention is that the trial court failed to instruct the jury on the difference between knowledge and intent, thus rendering an improper verdict. The State's response is that defendant waived this issue because he failed to object at trial or to raise it in his post-trial motion, and in any event, the court's instructions were proper. We agree that defendant has waived this issue; however, because an alleged error in the jury instructions is such a significant issue, we may review it. See *People v. Jones* (1979), 81 Ill. 2d 1, 7, 405 N.E.2d 343; *People v. Jenkins* (1977), 69 Ill. 2d 61, 66, 370 N.E.2d 532.

■ ■ In order to convict a defendant of attempted murder, the jury must be instructed that the defendant had a specific intent to kill. (*People v. Jones* (1979), 81 Ill. 2d 2, 8-9, 405 N.E.2d 343; see also *People v. Trinkle* (1977), 68 Ill. 2d 198, 204, 369 N.E.2d 888; *People v. Viser* (1975), 62 Ill. 2d 568, 581-83, 343 N.E.2d 903.) However, the jury need not be instructed on the terms knowingly and intentionally because those terms have a plain meaning within the jury's common knowledge. (See *People v. Masini* (1978), 65 Ill. App. 3d 1011, 1015, 383 N.E.2d 1, *aff'd* (1979), 78 Ill. 2d 17, 397 N.E.2d 1368; *People v. Montgomery* (1974), 18 Ill. App. 3d 828, 834, 310 N.E.2d 760, *appeal denied* (1974), 55 Ill. 2d 606.) As long as the trial court gives an accurate attempted murder instruction, which contains the element of specific intent to kill, any alleged error in the instructions is minimized. (See *People v. Jones* (1979), 81 Ill. 2d 1, 10, 405 N.E.2d 843.) Moreover, where evidence of a defendant's guilt is so clear and convincing that a jury could not reasonably have found the defendant not guilty, an error in the instructions does not require reversal. 81 Ill. 2d 1, 9-10, 405 N.E.2d 343.

In the case at bar, the jury sent a written question to the trial

court asking whether intent and knowledge were equivalent or different. Defense counsel objected to a clarifying instruction, and the court then told the jurors, "so far as the law is concerned, as far as your instructions are concerned, we do not have a separate and distinct definition of intent nor [sic] knowingly." The trial judge did not, as defendant argues, instruct the jury that both terms were legally indistinguishable. He merely permitted the jury to apply its own understanding of the plain meaning of those terms.

 Furthermore, the trial court gave the jury an accurate instruction concerning the elements of attempted murder, which included the element, "intent to commit the offense of murder." The instruction clearly apprised the jury that it had to find that defendant had the specific intent to kill in order to find him guilty. (See *People v. Terry* (1987), 154 Ill. App. 3d 162, 165, 506 N.E.2d 786.) The jury obviously understood that element because it found defendant not guilty with respect to the charge of attempted murder of Dick Zirbes, the man whom defendant claimed he never intended on shooting. In any event, we find the evidence against defendant to be so clear and convincing that any alleged error in the instructions does not require reversal.

 Finally, defendant contends that he received ineffective assistance of counsel due to the following errors of defense counsel: (1) in his opening statement, counsel conceded that defendant injured three people; (2) counsel allowed the jury to receive the erroneous instruction that there was no legal difference between the intent and knowingly, and in fact objected to a clarifying instruction when the jury requested one; and (3) counsel failed to call an expert witness, a psychologist, whose report stated that defendant acted without a specific intent or plan.

In order to show ineffective assistance of counsel a defendant must show, first, that his counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In other words, the attorney's representation must have fallen below an objective standard of reasonableness (466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064) such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) In addition, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. 668, 688, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065; see also *People v. Albanese* (1984),

104 Ill. 2d 504, 525, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061 (where the Illinois Supreme Court adopted the *Strickland* opinion).

▮▮ In the case at bar, the alleged errors which defendant cites were merely matters of judgment or trial strategy on the part of defense counsel which fail to establish incompetent representation. (See *People v. Murphy* (1978), 72 Ill. 2d 421, 427, 381 N.E.2d 677.) First, the fact that counsel conceded that defendant had shot three people was not unreasonable. On the contrary, it would have been unreasonable if counsel had denied the shootings. Defendant himself did not deny the shootings, nor was there any question about his identity. The only issue was defendant's intentions during the shootings, and in his opening statement counsel properly told the jury to ask "whether or not Jerry Powell really intended to commit murder on these people or the other events that are charged."

In addition, defense counsel may have decided that instructions on intent and knowingly would have served only to confuse the jury further. As we previously stated, counsel did not, as defendant alleges, allow the jury to be erroneously instructed that there was no legal difference between those words. The jury was merely permitted to apply its own knowledge of the plain meanings of the words.

Lastly, the decision whether or not to call an expert witness is a tactical decision and the failure of trial counsel to call such a witness cannot support a claim of ineffective assistance of counsel where, as here, the defendant has not shown that the outcome of the trial would have been different if the witness had been called. See *People v. Greer* (1980), 79 Ill. 2d 103, 121-24, 402 N.E.2d 203.

We find that defendant has failed to establish that defense counsel's performance was deficient considering all of the circumstances, or that the alleged deficiencies prejudiced his defense.

Accordingly, the 30-year sentence for the attempted murder of Mona Soloky is vacated and the cause is remanded for resentencing. The 15-year consecutive sentence for the attempted murder of Pete Hakanson is modified to run concurrently with the sentence for the attempted murder of Mona Soloky and as modified is affirmed.

Vacated in part and remanded; affirmed in part as modified.

BUCKLEY and MANNING, JJ., concur.