THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL C. BERRY, Defendant-Appellant.

First District (5th Division)   No. 86—2527

Opinion filed September 23, 1988.—Rehearing denied November 7, 1988.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Michael C. Berry appeals from his conviction and sentence for voluntary manslaughter in a bench trial in 1986. Defendant was charged with murder and armed violence and, after being found guilty of voluntary manslaughter, was sentenced to an extended term of 20 years to run consecutively to an extended six-year term he was serving for an unrelated theft conviction.

The facts are partially undisputed. Defendant was indicted for murder and armed violence that resulted in the death of Anna Warren. At that time defendant had been living with Irene Anderson and her seven children for approximately one year. Irene and two of her adult daughters, Brenda and Betty Anderson, testified to the following as State witnesses.

On April 1, 1985, Irene came home from work at 3:30 p.m. and defendant arrived at Irene's apartment an hour later. Defendant appeared to have been drinking. Prior to this date, defendant and Irene had had a disagreement concerning the victim, Anna Warren, whom Irene had never met. Irene objected to persistent, harassing phone calls from Warren and accused defendant of having an affair with Warren, an accusation defendant denied. After Irene and defendant arrived home on April 1, 1985, Warren called and said she was "on the way over to get her man."

After Warren's arrival, she, Irene, and defendant went into Irene's bedroom to talk. Brenda testified that Warren appeared to have been drinking. Irene's daughters, Brenda and Betty, observed

much of what subsequently occurred in the bedroom, and the following facts were testified to by the three Andersons. Warren removed her coat and blouse and two marijuana cigarettes fell to the floor. Warren then said that she was going to tell Irene everything after she ate some food Irene had offered to her. A quarrel then ensued between Warren and defendant, during which Warren insulted both defendant and Irene while relating various details of her relationship with defendant. At one point, defendant got up and started rummaging through a dresser drawer. When Warren expressed consternation, Irene told her there was nothing in the drawer but old socks, or old purses according to Betty, whereupon Warren picked up a heavy ceramic ashtray and held it down at her side. Irene testified that she had taken a knife away from one of her children several weeks earlier and had placed it on the nightstand from where it had later disappeared.

Irene asked defendant and Warren, who were by then standing facing each other, not to argue in her house in front of her children. While defendant and Warren were facing one another, Irene stepped between them, facing defendant. She then felt a burning pain in her neck and realized she had been cut with a knife. She originally stated that she didn't know who slashed her, but later testified that defendant did it. She did not testify that she saw a knife in either defendant's or Warren's hand. Then Irene either moved out of the way or was shoved away by defendant, whereupon Warren brought out a can of Mace and attempted to spray him. According to Brenda, the Mace spray missed defendant; however, Betty stated that the spray hit defendant. Thereafter, defendant lunged at Warren, knocking them both to the floor with Warren's head hitting a radiator. Defendant landed on top of Warren. Irene saw defendant striking Warren with his fists; Brenda saw defendant stabbing her, but could not actually see the weapon. All three State witnesses testified that Warren remained motionless after she hit the floor and that the assault lasted anywhere from 3 to 10 minutes.

Defendant then started to leave, but came back and started dragging Warren, saying he was going to throw her in the alley and let her die. Irene ordered him out and he left the apartment. Warren received five stab wounds in the head and neck area, one of which severed her spinal cord, paralyzing her from the neck down. She died four weeks later from resultant complications.

Defendant testified in his own defense. His testimony differed from that of the State witnesses in several aspects. He testified that Warren had often come to Irene's apartment with her (Warren's) boy-

friend. Defendant also stated that he, Irene, and Warren drank alcohol and smoked marijuana during Warren's visit. He further testified that after Warren threatened him with the ashtray, she slashed Irene's neck. Defendant then pushed Irene out of the way whereupon Warren tried to spray Mace at them and attempted to stab them with a knife. Defendant then ran at Warren and pushed her to the floor, at which time he was sprayed with Mace as it discharged when Warren hit the floor, causing his eyes to severely water and blur. Warren allegedly tried to stab defendant, and she was accidentally stabbed as defendant attempted to wrest the knife from her. Defendant claimed that in the struggle, he was stabbed several times and exhibited several scars to the court allegedly sustained in the struggle.

Other testimonial inconsistencies concerned how long the struggle lasted and Warren's movements, or lack thereof, after she was stabbed. After Warren's death, defendant was arrested in Mississippi, where he said he had gone to see his ill father. The trial court stated that it did not believe defendant's self-defense testimony and found him guilty of voluntary manslaughter after concluding that he had acted under a sudden and intense passion resulting from serious provocation caused by the Mace spraying.

At the sentencing hearing, the State introduced evidence of defendant's prior convictions for theft in 1985, armed robbery in 1981, and two convictions in 1977 for delivery of a controlled substance. Additionally, when he killed Warren, defendant was out on bond for a theft arrest for which he was subsequently convicted. The State requested an extended-term sentence since defendant had committed a Class X felony within the last 10 years and because of the brutality of Warren's killing.

In mitigation, defendant attempted to introduce evidence of a prior conviction of Warren for aggravated battery. The court sustained the State's motion to exclude such evidence because it could have been properly introduced at trial. Defendant was then sentenced to an extended term of 20 years. After finding that it was necessary to protect the public from further criminal acts by defendant, the court ordered that his sentence should run consecutively with the six-year theft conviction.

In appealing from his conviction, defendant contends that the State failed to prove beyond a reasonable doubt that he did not justifiably act in self-defense or defense of another, and that he received ineffective assistance of counsel because his trial counsel failed to introduce evidence of Warren's prior conviction. He also contends that the trial court erred in imposing an extended-term sentence to run con-

secutively to the sentence for an unrelated theft conviction.

■■ ■ Once a defendant asserts the affirmative defense of self-defense and introduces some evidence tending to prove he acted in self-defense, the State must then prove beyond a reasonable doubt that the use of deadly force was not justified. (*People v. Ortiz* (1978), 65 Ill. App. 3d 525, 382 N.E.2d 303.) It is then the court's duty to determine whether the defendant's belief that the situation required deadly force was a reasonable belief under the circumstances, and this court will not reverse the trial court's finding unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. (*People v. Florey* (1987), 153 Ill. App. 3d 530, 505 N.E.2d 1096.) Use of deadly force in defense of self or another is justified only where a person reasonably believes that such force is necessary to prevent imminent death or severe bodily harm. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) Furthermore, the person threatened must not be the aggressor. *People v. Walker* (1978), 58 Ill. App. 3d 535, 374 N.E.2d 880.

In this case, defendant claims that the record shows that Warren, not he, was the aggressor. The only person to testify that Warren had a knife was defendant. Irene, after initially testifying that she did not see a knife until after Warren was stabbed, later stated that defendant cut her in the neck and that Warren did not have a knife. There is admitted testimony to this effect despite defendant's contention that all such statements were stricken. The record also indicates that Irene never saw a knife in defendant's hand until after Warren was stabbed. All three Andersons testified that Warren picked up the ashtray and held it down at her side, apparently because she feared defendant's rummaging through a drawer. The three women further asserted that Warren did not make any threatening or aggressive motions toward defendant, that he attacked her, and that she remained motionless after being knocked to the floor. Warren did not bring forth the can of Mace until defendant charged towards her, according to the State witnesses.

■ ■ The trier of fact is not required to believe an accused's exculpatory statements; it must instead consider the probability or improbability of defendant's testimony, the surrounding circumstances, and the testimony of other witnesses. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 498 N.E.2d 547.) Moreover, self-defense is no justification for the use of deadly force once the antagonist has been subdued or is lying helpless on the ground. (*Balfour*, 148 Ill. App. 3d 215, 498 N.E.2d 547.) The Andersons' testimony indicates that defendant's belief that deadly force was necessary to defend himself against War-

ren was unreasonable. Keeping in mind that it is the trier of fact's task to determine the credibility of witnesses and the weight to be accorded their testimony (*People v. Florey* (1987), 153 Ill. App. 3d 530, 505 N.E.2d 1096), and noting the fact that Warren was stabbed five times, we find that the record clearly supports the fact finder's conclusion that defendant did not justifiably act in self-defense when he stabbed Warren.

■ Defendant next contends that he was denied effective assistance of counsel because of counsel's failure to introduce at trial evidence of Warren's prior aggravated battery conviction. A two-part standard applicable to claims of ineffective assistance of counsel was set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and was subsequently adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. To establish such a claim, a defendant must show that counsel committed such serious errors that, by an objective standard, his performance was incompetent and that the incompetency so prejudiced defendant that he was denied a fair trial. *Strickland,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

It is not enough to demonstrate that counsel's errors had some conceivable effect on the outcome of the trial; rather, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. (*People v. Thurman* (1988), 169 Ill. App. 3d 996, 523 N.E.2d 1184.) Competency of counsel is reviewed by a consideration of a totality of counsel's conduct, not isolated incidents. *Thurman,* 169 Ill. App. 3d 996, 523 N.E.2d 1184.

■ A victim's aggressive and violent character may be used in support of a self-defense claim to show that defendant's knowledge of that character tendency affected his perceptions of and reactions to the victim's behavior, or it can be used to support defendant's claim that the victim was the aggressor. (*People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018.) Such evidence is admissible once a defendant introduces some evidence of self-defense. (*Lynch,* 104 Ill. 2d 194, 470 N.E.2d 1018.) Warren's battery conviction was not raised at trial and when proffered for mitigation purposes at defendant's sentencing hearing was not allowed. Because of these circumstances, the record is silent as to whether defendant knew of the conviction, when or under what circumstances it occurred, and upon what act the conviction was based. However, even a professionally unreasonable error is not reversible error if it had no prejudicial effect on the judgment. (*People v. Van Ostran* (1988), 168 Ill. App. 3d 517, 522 N.E.2d 851.) Further-

more, it is appropriate for a reviewing court to determine the prejudice issue before examining counsel's alleged deficient conduct. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

Assuming, *arguendo,* that defense counsel's failure to present Warren's battery conviction at trial was unprofessional, it is apparent from the record that the inclusion of such evidence would not have changed the trial court's conclusions. A murder charge can be reduced to voluntary manslaughter when a person believes the circumstances justify the killing but his belief is unreasonable or the killing occurred while defendant was under a sudden and intense passion resulting from serious provocation. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).) Defendant was found guilty of voluntary manslaughter under the concept of provocation. The only recognized forms of serious provocation are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and spousal adultery. *People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78.

The trial court explicitly stated that it considered the cause to be "close as to whether it is murder or voluntary manslaughter," and further found that defendant's "credibility was just about nil as far as the Court is concerned." Furthermore, the court expressed belief in the testimony of the Andersons and especially Irene's changed testimony during cross-examination when she admitted that defendant was the person who stabbed her in the neck. It was also noted that the court was giving defendant the benefit of the doubt in finding him guilty of voluntary manslaughter based on the testimony of Betty that Warren had sprayed Mace on him before she was stabbed, testimony that contradicted that of Irene and Brenda Anderson.

In addition, the court commented on the fact that the physical evidence supported the Andersons' versions of the events. For example, there was medical testimony that once Warren's spinal cord was severed, she would have been unable to move or struggle and yet she was stabbed five times. Given the facts of the record, we do not believe that the introduction of a single battery conviction would have made more probable either the reasonableness of defendant's belief that deadly force was necessary or the possibility that Warren was the aggressor. (See *People v. Florey* (1987), 153 Ill. App. 3d 530, 505 N.E.2d 1096.) Accordingly, since defendant was not prejudiced by the omission of Warren's prior conviction, there is no need to examine the competency of defense counsel.

■ Lastly, defendant argues that his extended sentence of 20 years to run consecutively to a six-year term for an unrelated theft conviction should be reduced. He alleges that the trial court based

both the extended term, which exceeded the statutory minimum for an extended term by five years, and the consecutive sentences, on his prior convictions and that such enhancement of penalties is improper. Defendant also claims the court refused to consider relevant factors in mitigation.

The determination and imposition of a sentence involves considerable judicial discretion with which a reviewing court will not interfere absent an abuse of discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) In determining the appropriate sentence, a court must consider all factors, both in aggravation and mitigation, and balance those factors against each other. *People v. Powell* (1987), 159 Ill. App. 3d 1005, 512 N.E.2d 1364.

■■ At defendant's sentencing hearing in the present case, the court recited the factors in mitigation and aggravation set forth by statute (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), commenting on each as it applied or did not apply to defendant. Regarding the mitigation factors that (1) defendant was acting under a strong provocation, (2) the presence of grounds tending to excuse or justify defendant's acts, although there was a failure to establish a defense, and (3) defendant's acts were induced by another person, the court commented that these factors were taken into consideration when it reduced the charge from murder to voluntary manslaughter. In considering whether defendant's criminal conduct was the result of circumstances likely to recur, the court stated, "Will Mr. Berry have further trouble with the law again when he gets out[?] He probably will the rest of his life up until such time as he is an old man."

The court further found that several of the factors in aggravation were applicable, including defendant's conviction of a felony while on probation for a prior felony, his heinous and brutal behavior in stabbing the victim five times after she was still and then attempting to drag her to an alley to let her die, and defendant's prior armed robbery conviction which had occurred within the past 10 years. After defense counsel objected to the brutal and heinous factor, the court expressly stated that defendant's extended term was based on the prior armed robbery conviction and cited "chapter 38, section 1005—5—3.2(b)(1)." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1).

Although unclear, it appears from the court's statements, that it may not have considered certain mitigation factors as required by law. The fact that certain of these factors were also considered during trial does not eliminate the necessity for considering them in sentencing proceedings. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1.) There certainly were grounds tending to justify defendant's conduct,

even though they did not support his self-defense claim. The court had already determined that defendant was provoked by the victim's conduct. On the other hand, it is possible to interpret the court's comments as reflecting that it had considered the above factors and found that they were outweighed by aggravating factors. Deferring to the trial court's considerable discretion in sentencing matters, we assume the court considered the appropriate factors. Accordingly, the imposition of an extended term based *either* on a previous conviction of the same or greater class of felony within 10 years (the 1981 armed robbery conviction) or exceptionally brutal or heinous behavior is appropriate. See *People v. Perez* (1981), 101 Ill. App. 3d 64, 427 N.E.2d 820.

■■ We further find defendant's double (or triple) enhancement argument to be meritless. He asserts that it was improper to impose extended sentences on him by the same trial court in separate proceedings, both for this voluntary manslaughter conviction and an unrelated theft conviction, based on the same 1981 armed robbery conviction. Defendant relies on *People v. Gray* (1984), 121 Ill. App. 3d 867, 460 N.E.2d 354, which held that the imposition of an extended term for concealment of a homicidal death made to run consecutively with sentences for involuntary manslaughter and obstructing justice was an improper augmentation of punishment. We note that the combined sentences in *Gray* exceeded the statutory limitation therefor. Moreover, the sentences in *Gray* all resulted from one trial and interrelated offenses. However, where there are separate trials resulting in separate convictions arising out of distinct factual situations, it is proper to impose extended sentences for both crimes. (See *People v. Whitson* (1984), 127 Ill. App. 3d 999, 470 N.E.2d 1054.) It would be illogical to disallow a past unrelated felony conviction from being used more than once for sentencing purposes involving subsequent unrelated crimes. Since our review of sentencing is limited (*People v. Smith* (1982), 110 Ill. App. 3d 286, 442 N.E.2d 294), we must uphold the trial court's imposition of an extended term.

■■ However, we find that, although not technically a double enhancement, an extended term for voluntary manslaughter to run consecutively with an extended term for theft results in a substantial departure from the fundamental spirit of the law. (See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Consecutive sentences may be imposed if the trial court sets forth in the record that it believes such sentencing is necessary to protect the public from further criminal conduct by the defendant. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b); *People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473.) Here,

the trial court found a necessity to protect the public and based that need on defendant's past convictions, his background, and on the facts of the present case.

However, a mere statement that the court is of the opinion that consecutive sentences are required to protect the public may not be sufficient if the record fails to establish justification for consecutive sentences. (*People v. Soloman* (1983), 116 Ill. App. 3d 481, 451 N.E.2d 953.) In the present case, we do not find that the record sufficiently supports the trial court's conclusions on this matter. The circumstances underlying defendant's voluntary manslaughter conviction are not such that would be likely to recur. Moreover, the theft conviction, for which defendant received an extended term and which is to run consecutively with this conviction, was recently affirmed by this court. (*People v. Berry* (1987), 155 Ill. App. 3d 1161 (unpublished Rule 23 order).) The theft was a Class 3 felony involving the taking of $10 from a bus passenger. The same judge presided over both defendant's theft trial and the present trial.

We have deferred to the trial court's consideration of the aggravation and mitigation factors and its discretion in deciding to sentence defendant to an extended term. However, considering this State's policy to impose consecutive sentences sparingly (*People v. Powell* (1987), 159 Ill. App. 3d 1005, 512 N.E.2d 1364), and considering the nature and circumstances of the crime in this case, we do not believe the record adequately indicates a need to protect the public from further criminal conduct by defendant.

Therefore, defendant's conviction for voluntary manslaughter is affirmed. His extended sentence is also affirmed but the consecutive term is reversed and remanded for resentencing in accordance with the above opinion.

Affirmed in part; reversed and remanded in part.

LORENZ, P.J., and PINCHAM, J., concur.