THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN HAUN, Defendant-Appellant.

Fifth District No. 5—90—0064

Opinion filed November 7, 1991.

Brian D. Lewis, of Mitchell & Armstrong, Ltd., of Marion, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant Melvin Haun was charged by information with four counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(b)(1), 12—16(c)(1).) A jury trial was held November 13 through 15, 1989. After the State rested its case, the court directed a verdict of not guilty as to two counts of aggravated criminal sexual assault. The jury found defendant guilty on all remaining counts. Defendant was sentenced to concurrent terms of imprisonment of 10 years on one count of aggravated criminal sexual assault and five years each on the two counts of aggravated criminal sexual abuse. The court imposed a consecutive 10-year sentence for the remaining count of aggravated criminal sexual assault.

Defendant appeals alleging: (1) the trial court erred in denying defendant's motion *in limine* and admitting the testimony of Dr. St. Germaine; (2) the trial court erred in refusing to strike the testimony of State witnesses who had discussed defendant's testimony with the prosecutor prior to testifying in rebuttal; (3) defendant was not proved guilty beyond a reasonable doubt; (4) the trial court erred in denying defendant's motion for a new trial based upon newly discovered evidence; (5) the trial court's cumulative errors deprived defendant of a fair trial; and (6) the trial court erred in imposing consecutive sentences. We affirm.

S.N., 15, testified regarding instances of sexual contact with defendant, her stepgrandfather, which occurred during the period September through November 1985, and during a period late in 1986. S.N. testified that in the fall of 1985, her family would frequently eat dinner with defendant and his wife at their home in the Makanda

area, south of Carbondale, Illinois. S.N. stated that she occasionally accompanied defendant to Arnold's Market at his request and that after buying groceries, they would sometimes take "a long way home," driving past the Southern Illinois University (SIU) farms. On two occasions, defendant stopped his vehicle in different areas near the farms and sexually assaulted S.N. Once, defendant pulled his vehicle off the side of the paved road surface onto the gravel shoulder and forced S.N. to touch her lips to his penis. S.N. testified that on another occasion, defendant "pulled off into a road that was paved for just a little bit and then turned into a gravel, like a driveway kind of." On this occasion, defendant fondled her breasts and vaginal area, touched his tongue to her vagina and placed her hand on his penis. S.N. further testified that in 1987, she directed police officer Pam Burke to the locations where these events had occurred and Burke took photographs. S.N. identified People's exhibits Nos. 1 through 3 as photographs of Green Ridge Road, the partially paved road which she had testified was the site of one of the sexual assaults in the fall of 1985.

S.N. related another incident during the fall of 1985 when defendant was driving a green van. After going to Arnold's Market, defendant stopped the van on a small gravel lane off Boskydell Road. Defendant put S.N. against the front seat or on the floor of the van, pulled her pants down and rubbed his penis against her vagina. S.N. identified People's exhibits Nos. 4, 5 and 6 as pictures of the area near Boskydell Road where defendant had taken her.

S.N. testified that in October 1985 or 1986, she accompanied defendant to his office on the second floor of the SIU School of Technical Careers building so that he could pick up some papers. On this occasion, defendant pushed S.N. onto the floor of his office, partially removed her clothes, fondled her and rubbed his penis against her vagina.

S.N. related three incidents occurring at defendant's home in the fall of 1986. On one occasion, defendant pushed her to the floor of his bedroom, pulled her pants down, fondled her and rubbed his penis against her. On another occasion, both were nude in defendant's bedroom. Defendant, wearing a condom, attempted sexual intercourse but, failing to achieve penetration, stopped. Several nights later, S.N. had gone to sleep in the spare bedroom and defendant woke her, put a condom on his penis and penetrated her vagina. These last two incidents occurred in October 1986, while defendant's wife was in the hospital.

Nancy N., S.N.'s mother, testified that she had been married to Robert Haun, defendant's son, from 1982 until 1988. Nancy N. separated from Robert Haun on September 21, 1987, after S.N. complained that "Robert had his hands all over her." Nancy N. confirmed that she, Robert Haun, and her daughters S.N. and C.N. had frequently gone to defendant's house for dinner and that her daughters often spent the night there. Nancy N. testified that she recalled several occasions during the fall of 1985 through the fall of 1986 when S.N. and defendant went together to the grocery store, to pick up school papers in defendant's office at SIU or to select or return video tapes. Nancy N. noticed that on several of these occasions S.N. and defendant were gone quite a long time. Nancy N. stated that although her daughters usually wanted to spend the night with defendant and his wife, S.N. had made an objection on more than one occasion when her mother encouraged her to accompany defendant to the store. Although S.N. had once complained to her fifth-grade teacher, sometime in 1984 or 1985, that her stepfather Robert had been touching her, she had never complained about defendant to anyone until she was questioned by police and case workers from the Department of Children and Family Services (DCFS) following the September 1987 incident with her stepfather.

Monica Joost, a member of the Illinois State Police, Division of Criminal Investigation, testified that she interviewed S.N. in November 1987. Officer Joost testified that S.N. related various incidents involving defendant that had occurred in 1985 and 1986, described locations in Jackson County where the incidents had occurred and told Officer Joost how to get to these locations. S.N. described an area near the SIU farms, a gravel road off Boskydell Road, a building on the SIU campus containing defendant's office, and defendant's residence. S.N. told Officer Joost that the road near the SIU farms was paved in the beginning and then turned to gravel, and that she had been to that location with defendant approximately five times in as many as three different vehicles. Officer Joost testified that S.N. told her the incident in defendant's office occurred when she was in the sixth grade, in the fall of 1986. Officer Joost stated that S.N. was somewhat confused regarding the dates of some of the incidents.

Pam Burke, an investigator with the Illinois State Police, testified that she met with S.N. in late December 1987, for the purpose of having her show Ms. Burke some of the locations in Jackson County where the incidents involving defendant had occurred. S.N. directed Ms. Burke to the School of Technical Careers and College of Engineering and Technology Building on the SIU campus, then to another

location past the SIU farms on Green Ridge Road. Ms. Burke testified that Green Ridge Road was paved for approximately 75 yards before it turned to gravel and that S.N. directed her to stop at the top of a hill seven-tenths of a mile from the intersection of Green Ridge and Union Hills Road. S.N. then directed Ms. Burke down Boskydell Road to a gravel road just past a small bridge. Ms. Burke took photographs, which she identified as People's exhibits Nos. 1 through 8, at the three locations.

Dr. Diana St. Germaine testified that she is in family practice in Anna, Illinois, and is a consultant for DCFS, examining children in relation to sex-abuse cases. Dr. St. Germaine examined S.N. on October 14, 1987, on a referral from DCFS. During the interview portion of the examination, S.N. related that her stepfather and stepgrandfather had sexually abused her. Dr. St. Germaine testified that S.N. had been fairly shy, had not wanted to freely answer questions, and seemed embarrassed, uncomfortable and emotionally upset, even crying at one point. The doctor testified that the fact she could easily insert her index finger into S.N.'s vagina, together with her demeanor and history, were findings consistent with sexual abuse. Dr. St. Germaine admitted that she could not say, based on the physical examination, who the perpetrator had been and that her findings would have also been consistent with the practice of masturbation.

Defendant called Mary Katherine Woods, who testified that she had been S.N.'s fifth-grade teacher at Unity Point School. Ms. Woods recalled that S.N. had once complained that her stepfather had been "messing with her." Ms. Woods turned this information over to the principal, who contacted S.N.'s mother. Ms. Woods testified that although Nancy N. was upset, she stated that S.N. was having a hard time getting adjusted to her new stepfather and that S.N. was not getting as much attention from her mother as she had before the marriage.

Officer Richard Evans, Illinois State Police, testified that during a September 23, 1987, interview, S.N. reported that she had had sexual intercourse with her stepfather from the time she was in the fourth grade until the previous day. Officer Evans stated that the vast majority of his conversation with S.N. concerned Robert Haun and that defendant's name was not mentioned until the end of the interview when she was asked if anyone else had ever abused her. S.N. then stated that she had been penetrated by her stepgrandfather, using either his penis or a finger, approximately 15 times and that the last time had occurred when she was 11 years old and in the sixth grade.

Officer Evans also testified that S.N. stated she had performed oral sex on her stepgrandfather twice at his home.

Alvena Valesco, a family friend, and William Shupe, a co-worker of defendant, presented evidence as to the good character and reputation of defendant. Defendant then testified in his own behalf, denying that he had ever done any of the acts testified to by S.N.. Defendant testified that he was retired from the United States Army after serving 21 years, with tours in both Korea and Vietnam. Defendant stated that he was a professor at SIU in the field of electronic technology and acted as a student advisor and special-needs contact person, listening to student problems and referring them to the appropriate agency for help.

Defendant further testified that in 1983, S.N. and her mother, sister and stepfather, defendant's son, lived with defendant and his wife for approximately three months. During this time, defendant provided food, clothing and shelter for his son's family. After the family moved out of defendant's house, they continued to come over for meals on a regular basis.

Defendant testified that he had taken S.N. and her sister to the grocery store at times, but that they usually went to National or Kroger's and not to Arnold's. Defendant stated that the two girls would "pester" him to go and vehemently denied ever having taken the "long way home" in order to fondle S.N. Defendant testified that the location south of the SIU farms, identified by S.N. as a scene of sexual contact, was in the same area as Egon Kamarasy's house. Defendant, his wife, S.N. and her family had gone to this area to look at horses because S.N. was "crazy about horses." Defendant and S.N.'s family had also been to the area on Boskydell Road many times to look at horses. Contrary to S.N.'s testimony, defendant stated that his office was on the third floor of the technical building, not the second, and that S.N. had been there many times.

Defendant testified that he was very close to his stepgrandchildren, including S.N., and treated them no differently than his own grandchildren. He characterized S.N. as having a very vindictive nature and stated that no one ever forced her to do anything. Defendant testified that several weeks before the allegations against him were made by S.N. in 1987, she became upset when her mother refused to allow her to remain at defendant's house for the night. After S.N. "threw a fit" for about 20 minutes, defendant and his son Robert "picked her up physically and put her in the trunk of the car," which upset her greatly.

Thereafter, pursuant to a request made by the State, the prosecution was granted permission by the court to examine defendant's penis regarding the existence of a wart testified to by defendant. A law clerk in the State's Attorneys office, testified that defendant had a mole-like darkened spot approximately a quarter-inch wide on the left side of his foreskin.

The State then called Nancy N., who testified in rebuttal that she had never gone with her family and defendant to a horse farm located near the SIU farms or to see horses in the Boskydell Road area. S.N. testified in rebuttal that she had not gone with her family and defendant to either of the rural areas where she alleged the sexual assaults had occurred for the purpose of viewing horses. S.N. denied that she was ever confidential or close with defendant. Under cross-examination, S.N. testified that she was told "little bits and pieces" of defendant's testimony by the prosecutor prior to her rebuttal testimony and that the prosecutor had also spoken to her mother.

Defendant testified in surrebuttal that the growth on his penis became raised and enlarged when he had an erection. Defendant stated that the growth was not a mole but rather a venereal wart or cyst, according to "the doctors," and that it would be "quite observable" to anyone touching his penis.

Defendant first argues that the trial court erred in denying his motion *in limine* to bar the testimony of Dr. St. Germaine. The defendant contends that Dr. St. Germaine's testimony was irrelevant, prejudicial and inadmissible because S.N. admitted to having been abused by someone other than defendant; thus, the doctor's opinion had no probative value because the doctor could not link the abuse to defendant.

The trial court has wide discretion in determining the admissibility of expert testimony and that decision will not be overturned on review unless clearly and prejudicially erroneous. (*People v. Jackson* (1986), 145 Ill. App. 3d 626, 635, 495 N.E.2d 1207, 1215.) Furthermore, a trial court's determination as to the proper balance between the probative value of evidence and its prejudicial effect should not be disturbed unless the court has abused its discretion. (*People v. Remsen* (1978), 60 Ill. App. 3d 266, 270, 376 N.E.2d 726, 729.) Evidence which is otherwise relevant will not be excluded merely because it may prejudice the accused. (*Jackson*, 145 Ill. App. 3d at 635, 495 N.E.2d at 1215.) "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. *People v. Boclair* (1989), 129 Ill. 2d 458, 477, 544 N.E.2d 715, 723.

■ In the case at bar, Dr. St. Germaine's expert testimony that S.N. exhibited signs consistent with having been sexually abused was relevant and probative to whether the crimes occurred. As the State suggests, the fact that Dr. St. Germaine could not express an opinion as to the identity of the perpetrator goes to the weight of her testimony and not its admissibility. Further, the record shows the jury was well informed of the perimeters of the doctor's opinion. We therefore cannot say that the trial court's determination that the probative value of this expert testimony outweighed the possibility of prejudice to defendant was clearly erroneous.

Defendant next contends that the trial court erred in allowing S.N. and her mother to testify in rebuttal because the State had violated the rule on witnesses by speaking with the two regarding defendant's testimony. Prior to the presentation of any evidence at trial, the court entered a rule on witnesses "to make sure that no witness is present in the courtroom while another witness testifies, so that one witness may not hear another witness' testimony." Defendant contends that the State violated this rule where, although the rebuttal witnesses had been barred from the courtroom so they would not hear other testimony, the prosecutor talked with them about defendant's testimony.

■ The "rule on witnesses" is a common rule of criminal trial practice which favors the exclusion of all witnesses not testifying. However, violation of this custom is not reversible error absent an affirmative showing of prejudice. (*People v. Toolen* (1983), 116 Ill. App. 3d 632, 647, 451 N.E.2d 1364, 1375.) In *People v. Miller* (1962), 26 Ill. 2d 305, 307, 186 N.E.2d 317, 318, the defendant argued that he was prejudiced by a witness' presence in the courtroom when the main prosecution witness was testifying. Although the witness complained of, a police officer, corroborated the testimony of the main prosecution witness, the *Miller* court rejected the argument that defendant was prejudiced, noting that the defendant had not shown the officer's testimony would have been different had he been excluded from the courtroom. (26 Ill. 2d at 307-08, 186 N.E.2d at 318.) Similarly here, defendant has not demonstrated that he was unfairly prejudiced by the testimony of the two rebuttal witnesses and the record does not indicate that their testimony would have been different had they not been informed by the prosecutor of the content of defendant's testimony.

Additionally, as the trial court noted, the rebuttal testimony was not decisive, being limited to collateral matters such as whether S.N., her family and defendant had ever been to visit horses in the areas

where she testified the abuse occurred. Therefore, even if the prosecutor's actions violated the court's rule on witnesses, where defendant has established no prejudice, the trial court did not err in refusing to strike the testimony of the rebuttal witnesses or to grant a mistrial.

Defendant next contends that the evidence was insufficient to sustain his conviction because S.N.'s testimony was neither clear and convincing nor substantially corroborated by other evidence. However, the standard to be used in reviewing the sufficiency of the evidence in all criminal cases is proof beyond a reasonable doubt, whether the evidence is direct or circumstantial. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346; *People v. Mitchell* (1991), 215 Ill. App. 3d 849, 861, 576 N.E.2d 78, 86.

In cases where a sex offense is charged, the State is no longer required to demonstrate that the victim's testimony is either clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt. (*Mitchell*, 215 Ill. App. 3d at 861, 576 N.E.2d at 86; *People v. Roy* (1990), 201 Ill. App. 3d 166, 185, 558 N.E.2d 1208, 1221; see also *People v. Meador* (1991), 210 Ill. App. 3d 829, 831, 568 N.E.2d 1386, 1387.) Therefore, the appropriate standard of review when a challenge to the sufficiency of the evidence is presented is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Schott* (1991), 145 Ill. 2d 188; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267; *Mitchell*, 215 Ill. App. 3d at 861, 576 N.E.2d at 86.

In the instant case, defendant was convicted of one count of aggravated criminal sexual assault which occurred between September and November 1985 and two counts of aggravated criminal sexual abuse and one count of aggravated criminal sexual assault which occurred between September and November 1986. At trial, S.N. testified that numerous instances of sexual contact with defendant had occurred during these time periods, and she gave clear and detailed descriptions of the four incidents upon which defendant's convictions were based.

S.N. testified that during the fall of 1985, she had, on several occasions, accompanied defendant to the market and then taken the "long way home." On one particular occasion, defendant pulled off onto the gravel shoulder of a paved road near the SIU farms and forced her to touch her lips to his penis.

S.N. also testified to three incidents occurring at defendant's home during September through November 1986. S.N. testified that defendant fondled her while she lay on the floor in his bedroom, and that on another occasion they were on the bed in his bedroom and defendant attempted intercourse. S.N. further testified that several days later she was sleeping in the spare bedroom of defendant's home when defendant woke her, put on a condom and then had intercourse with her.

Both Officer Joost and Investigator Burke stated that S.N. identified several locations where sexual contact with defendant had occurred, including defendant's home and the area near the SIU farms. Although S.N. did not describe specific locations or incidents to Officer Evans, he stated that his interview was primarily confined to abuse by Robert Haun. S.N. did tell Evans that defendant had abused or assaulted her numerous times between approximately 1985 and 1987.

The resolution of factual disputes and the assessment of the credibility of witnesses are for the trier of fact. (*Meador*, 210 Ill. App. 3d at 832, 268 N.E.2d at 1388.) The discrepancies alleged by defendant, between S.N.'s testimony regarding the precise time and nature of some of the incidents and her prior statements, do not render her testimony incredible. Such minor discrepancies affect only the weight of the victim's testimony and are to be evaluated by the trier of fact. (210 Ill. App. 3d at 832, 268 N.E.2d at 1388.) Viewing all the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of aggravated criminal sexual assault and aggravated criminal sexual abuse. We therefore conclude that the jury's finding is not so unsatisfactory, unreasonable or improbable as to raise a reasonable doubt of defendant's guilt.

Defendant further asserts that the trial court erred in denying his motion for a new trial based upon newly discovered evidence. Specifically, defendant contends that S.N. testified that one of the locations where defendant had assaulted her in 1985 was down a road that was paved for a short distance and then turned into gravel. Defendant asserts that newly discovered evidence impeaches this testimony where it shows that this road, identified at trial as Green Ridge Road, was not partially paved until 1987, two years after S.N. said the incident occurred.

■ Initially, the State argues that this issue is waived where defendant failed to attach to his motion for a new trial based on newly discovered evidence supporting affidavits from the witnesses who would testify at retrial or failed to sufficiently explain the lack

thereof. (See *People v. Gray* (1981), 96 Ill. App. 3d 757, 762, 422 N.E.2d 45, 49; *People v. Knebel* (1981), 94 Ill. App. 3d 773, 774, 419 N.E.2d 105, 106.) However, at the hearing on defendant's motion, the State did not argue that the motion was insufficient due to the lack of affidavits, nor did the court make such a finding. Defendant's motion sufficiently described the new evidence, its source and the circumstances surrounding its discovery, and the court was aware that the witnesses involved were prepared to testify at the hearing. Therefore, we will not consider the issue waived for purposes of review. Compare *Gray*, 96 Ill. App. 3d at 762, 422 N.E.2d at 49.

To warrant a new trial based upon newly discovered evidence, the new evidence must be of such conclusive character that it will probably change the result upon retrial; it must be material to the issue and not merely cumulative; and it must have been discovered after trial and not have been discoverable before trial through the exercise of due diligence. (*People v. DeCesare* (1989), 190 Ill. App. 3d 934, 943, 547 N.E.2d 650, 656; *People v. Molstad* (1984), 101 Ill. 2d 128, 134, 461 N.E.2d 398, 402.) Such motions are not favored and will be subjected to the closest scrutiny. (*DeCesare*, 190 Ill. App. 3d at 943, 547 N.E.2d at 656.) The decision to grant or deny a motion for a new trial based on newly discovered evidence is discretionary with the trial court, whose ruling will not be disturbed on review absent a showing of manifest abuse. *People v. Hughes* (1984), 121 Ill. App. 3d 992, 1002, 460 N.E.2d 485, 492; *People v. Waldroud* (1987), 163 Ill. App. 3d 316, 319, 516 N.E.2d 623, 625.

In the instant case, although it appears that defense counsel had exercised due diligence in discovering the evidence of when Green Ridge Road was partially paved, the trial court denied defendant's motion for a new trial on the ground that the evidence "d[id] not rise to the level under the correct status of the law of being a basis for a new trial." We agree. Newly discovered evidence which only has the affect of impeaching, discrediting, or contradicting the witness does not require a new trial. See *People v. Nolden* (1980), 91 Ill. App. 3d 532, 542-43, 414 N.E.2d 1124, 1132; *Hughes*, 121 Ill. App. 3d at 1002, 460 N.E.2d at 493.

Here, where the new evidence has only impeachment value and is concerned solely with the location of one of the incidents and not the crimes themselves, this evidence was not so conclusive as to affect the result upon retrial. (See *Waldroud*, 163 Ill. App. 3d at 319-20, 516 N.E.2d at 625-26 (defendant not entitled to new trial where new evidence relating to lighting condition at scene of crime, which would have impeached testimony of complaining witnesses, was not such as

to change outcome of trial).) Based on the standards set forth above, this court cannot conclude that the trial court abused its discretion in denying defendant a new trial based on the evidence concerning Green Ridge Road.

■ Defendant next contends that even if each alleged error was not prejudicial, the cumulative effect of the trial court's errors denied defendant a fair trial. However, in view of our finding that no errors were committed by the trial court, it is our judgment that defendant was prejudiced neither individually nor cumulatively. See *People v. Bodoh* (1990), 200 Ill. App. 3d 415, 432, 558 N.E.2d 178, 189; see also *People v. Humphrey* (1980), 89 Ill. App. 3d 673, 678, 411 N.E.2d 1228, 1232 (where defendant has not shown prejudice, prejudice cannot arise as a cumulative effect).

■ Finally, defendant contends that the trial court erred in imposing consecutive sentences, given the evidence in mitigation and the fact that the court's only stated reason for imposing a consecutive sentence was that one act (count IV) was a separate and distinct offense, having been committed during another period of time than the remaining counts. However, section 5—8—4(b) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b)), which requires that the court "shall set forth in the record" the basis for its determination that consecutive sentences are "required to protect the public from further criminal conduct by the defendant," has been held permissive rather than mandatory and is waived if the defendant does not request a specific finding relative to that sentence. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b); *People v. Hicks* (1984), 101 Ill. 2d 366, 374, 462 N.E.2d 473, 476-77.) In the instant case, defendant did not request a statement of reasons for the consecutive sentence imposed, and therefore, his objection to the trial court's failure to enumerate its reasons is waived.

Furthermore, section 5—8—4(a) of the Code requires the trial court to impose consecutive sentences in cases of multiple felony convictions when one of the offenses is criminal sexual assault or aggravated criminal sexual assault, and imposition of consecutive sentences under such conditions is not limited to cases where the convictions arise from offenses committed as part of a single course of conduct. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)); *People v. Ewald* (1991), 210 Ill. App. 3d 7, 568 N.E.2d 451.) Here, defendant was convicted, *inter alia*, of one count of aggravated criminal sexual assault which occurred in 1985 and one count of aggravated criminal sexual assault which occurred in 1986. We find, therefore, that the record es-

tablishes a sufficient basis for the trial court's imposition of a consecutive sentence.

It is well settled that the trial court is accorded wide latitude in sentencing, and its decision is entitled to great deference and weight on review. (*People v. Perruquet* (1983), 118 Ill. App. 3d 293, 299, 454 N.E.2d 1055, 1060.) Here, the trial court considered the fact that defendant had no prior contacts with the law and had, until this matter, "led an exemplary life." The court imposed a significantly more lenient sentence than the 46-year term requested by the State. We find, therefore, that the trial court did not abuse its discretion in sentencing defendant.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

GOLDENHERSH and CHAPMAN, JJ., concur.