THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHANNON RUCKER, Defendant-Appellant.

Second District   No. 2—92—1212

Opinion filed April 22, 1994.

G. Joseph Weller, Barbara R. Paschen, and Kathleen J. Hamill, all of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers

and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE PECCARELLI delivered the opinion of the court:

Defendant, Shannon Rucker, pleaded guilty to two counts of armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))). The court sentenced defendant to consecutive terms of 6 and 14 years' imprisonment. Defendant appeals, contending that the consecutive sentences totalling 20 years are not necessary to protect the public. Defendant also contends that the 14-year term is excessive, failing to take into account his youth, lack of criminal history and rehabilitative potential.

Defendant and two codefendants, John Kent and Loren Villar, were charged with armed robbery and aggravated battery following two separate attacks on a pizza delivery man. The factual basis for defendant's pleas was that on March 31, 1991, he was involved in the attacks on Syed Razvi. On the first occasion, defendant, Kent, and Villar placed a pizza order. When Razvi attempted to deliver the pizza, defendant, Kent, and Villar confronted him with a metal pipe and robbed him of a pizza and a soft drink.

The following evening, they placed a second order from a different location, and Razvi again responded. This time, they struck him with baseball bats and took money from him. Razvi suffered a broken elbow. After being arrested, defendant made inculpatory statements to the police.

The court accepted the pleas. At the sentencing hearing, East Dundee police chief Ignacio Pena testified that he investigated the first robbery and assisted the Carpentersville police in investigating the second.

At the Carpentersville police station, defendant advised Ignacio Pena that, during the first robbery, he struck Razvi with a 9- or 10-inch metal bar. His companions removed a pizza from the delivery truck.

According to Pena, defendant said that after the first attempt Kent suggested that they try it again, hoping to obtain money. On this occasion, defendant struck Razvi three times with a bat and Kent took money from him. When a Carpentersville police detective asked defendant if he realized how seriously the driver was injured, defendant responded that when he heard a thud he was not sure how badly the man was hurt. However, after he heard him breathing, he ceased to be concerned about it.

Razvi testified that during the second incident he received three blows to the neck, elbow, and head. He was hospitalized for six days

with a fractured skull and a shattered elbow. He had two surgeries on the elbow which left him with a permanent 10% loss of movement. He testified that he was unable to work for awhile and eventually returned to a lower paying job. However, he was currently employed and the incident had no effect on his family.

The evidence in mitigation established that at the time of the offense defendant was two months past his 17th birthday and had been attending Dundee-Crown High School. During his first year of high school, he had been a "B" student and a member of the wrestling team.

Following a breakup with his girlfriend and the death of his grandmother, with whom he had had a close relationship, his grades began to drop and he began to have disciplinary problems at school. On one or two occasions (the record is unclear), defendant obtained his father's gun and threatened to kill himself. From December 1990 to January 1991, defendant was hospitalized for severe depression.

Defendant was released from the hospital for financial reasons, although the hospital staff opined that he was not completely recovered. He continued to see a psychiatrist, but his depression only increased. Late in February or early in March, defendant had an argument with his mother. He moved out of her house and moved in with his father, who lived a short distance away. Defendant began drinking steadily, consuming a 12-pack of beer every weekend. Defendant learned that Villar and Kent needed a place to stay and allowed them to move in with him.

At the sentencing hearing, defendant testified that Kent was the instigator of the two attacks. He stated that during the second incident it was actually Kent who struck the victim. Defendant testified that he told the police he had hit Razvi to make things easier on Kent, who had a criminal record.

Defendant's hospital records were attached to the presentence report. The admitting diagnosis was major depression and alcohol abuse. Psychological testing showed that defendant's IQ was 130. The discharge summary contains the following conclusions:

"[I]ntellectual functioning was in the superior range but [defendant was] unable to utilize it because of depression. He tended to focus on the nonessential details and this is the important picture. He also was an obsessive thinker and has a lot of excessive obsessive ruminations, which exacerbates the depression. The patient was involved in family therapy and it was noticed that the patient has been manipulating his mother at times. Also threatens his mother. When the patient realized that he was not getting discharged, he became very aggressive and threatened his mother

during the family session and the mother got scared and ran out of the room. The patient at one point also had to be put in restraints because of his aggressive and threatening behavior. He continued to lack insight in his illness and did not see his behavior as wrong. With some confrontation and therapy, he developed some insight into his illness and in the following family sessions, a contract was made, and he was willing to go along with the contract, and realized the consequences of not doing his work at home and also for his wrong behavior. He was not having any suicidal or hopeless feelings and was able to deal with his girlfriend breaking up. He tended to intellectualize things a lot, and had difficulty dealing with emotions."

Defendant expressed his remorse for what happened and stated that he would be willing to pay restitution to the victim. He obtained his GED while incarcerated and had been awarded a partial scholarship to McHenry County College.

Following the hearing, the court sentenced defendant as noted above. The court denied a motion to reconsider the sentences, and defendant timely appealed.

On appeal, defendant contends that the 14-year term, running consecutively to the six-year sentence, constitutes an abuse of discretion. Defendant contends that the record does not reflect that such a sentence is necessary to protect the public and fails to recognize his high rehabilitative potential.

Section 5—8—4 of the Unified Code of Corrections governs the imposition of consecutive sentences. Section 5—8—4(b) provides:

"The court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b) (now 730 ILCS 5/5—8—4(b) (West 1992)).

The supreme court in *People v. Hicks* (1984), 101 Ill. 2d 366, held that the trial court is not required to recite the language of the statute in determining that consecutive sentences are warranted. Rather, the record must show only that " 'the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public.' " *Hicks*, 101 Ill. 2d at 375, quoting *People v. Pittman* (1982), 93 Ill. 2d 169, 178.

■ The record here does not demonstrate that consecutive sentences are necessary to protect the public from defendant. The record shows that defendant was a 17-year-old high school student with no history of juvenile delinquency. In fact, through his freshman year,

he had been a good student. However, within a few months prior to the offenses, he suffered a series of personal problems, including breaking up with his girlfriend, the death of his grandmother and an argument with his mother following which he moved out of her home. He moved in with his natural father. During this time, defendant became acquainted with codefendant Kent. The record appears to support defendant's assertion that Kent planned the offenses and cajoled defendant into participating.

Thus, it appears that the instant offenses grew out of a series of emotional incidents which defendant faced. Of course, these factors do not excuse defendant's behavior. Virtually every adolescent experiences traumatic events in his or her life, and the vast majority do not respond with acts of violence against random strangers. Certainly, a lengthy prison sentence is warranted in view of the violent nature of the attack. We hold only that consecutive sentences totalling 20 years constitute an abuse of discretion based on the facts of this case.

The State contends that defendant's high school records and psychological reports reflect a history of emotional instability, uncontrolled anger, and responding to adversity with violence and aggression. The trial court, too, focused on defendant's inability to control his anger.

Defendant's school transcript, which is attached to the presentence report, shows a series of disciplinary actions. No details regarding the incidents or the discipline imposed are included. Without more, these incidents do not justify the lengthy sentences imposed.

The State also points to findings in the psychological report that defendant had trouble controlling his anger. One diagnosis found "homicidal ideations." At one point, defendant angrily confronted his mother during a family counselling session, so that the latter had to leave the room.

The findings of the psychological report must be viewed in context, however. Defendant voluntarily sought treatment. The admitting diagnosis was major depression. It is not surprising that someone suffering from depression should exhibit these symptoms. The reports reflect that defendant was making at least some progress. That defendant at least recognized the problem and attempted to obtain treatment for it should not be held against him.

The trial court also commented on defendant's manipulativeness. The record does support this finding to some extent. However, this finding alone does not require consecutive sentences. The record as a whole shows that defendant sought treatment for depression when

he felt he needed it. While he blamed Kent to some degree for involving him in the robberies (an assertion which finds support in the record), he nonetheless accepted responsibility for his actions and professed a willingness to pay compensation to the victim. This is not a case where defendant refused to accept any blame for his actions or attempted to orchestrate the proceedings to gain maximum possible advantage. In fact, defendant entered a plea of guilty without any agreement as to disposition or sentence. Manipulative conduct does not of itself warrant lengthy consecutive sentences.

The Illinois Constitution provides that all penalties are to be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, § 11; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154-55.) Courts have been willing to modify consecutive sentences on the basis of defendants' potential for rehabilitation. (See *People v. O'Neal* (1988), 125 Ill. 2d 291, 300-01 (and cases cited therein).) Defendant's young age and his record of academic achievement demonstrate a high probability of rehabilitation. Under these facts, consecutive sentences were not required to protect the public and were an abuse of discretion.

■ Defendant also appears to contend that the 14-year sentence for the second robbery was also an abuse of discretion. The imposition of a sentence is a matter of judicial discretion, and the standard of review to determine whether a sentence is excessive is whether a trial court abused that discretion. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297-98; *People v. McCain* (1993), 248 Ill. App. 3d 844, 850.) This is because the trial judge is normally in a better position than a court of review to consider such factors as credibility, demeanor, general moral character, mentality, social environment, habits, and age and accordingly determine the punishment to be imposed. (*O'Neal,* 125 Ill. 2d at 298; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Therefore, a trial court's sentencing decisions are entitled to great deference and weight. *Perruquet,* 68 Ill. 2d at 154; *McCain,* 248 Ill. App. 3d at 850.

Defendant does not contend that the trial court relied on improper aggravating factors or ignored relevant mitigating evidence. A reviewing court is not justified in disturbing a sentence merely because it would have balanced the factors in aggravation and mitigation differently. (*People v. Murillo* (1992), 225 Ill. App. 3d 286, 301.) The second robbery involved a brutal attack on an unarmed pizza delivery man. The victim was beaten with a baseball bat, resulting in a fractured skull and fractured elbow, and robbed of cash. It was the second such robbery against the same victim in a 24-

hour period. The sentencing range for a Class X felony such as armed robbery is 6 to 30 years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992)).) Defendant's 14-year sentence is closer to the low end of the range. Given the seriousness of the offense, we cannot say that this sentence was an abuse of discretion.

In summary, we affirm defendant's conviction of, and 14-year sentence for, armed robbery. However, we exercise our power pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) to modify the sentence to run concurrent to the six-year sentence imposed in case No. 91—CF—498.

For the foregoing reasons, the judgment of the circuit court is affirmed as modified.

Affirmed as modified.

WOODWARD and McLAREN, JJ., concur.