THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNIE SANDERS, Defendant-Appellant.

First District (2nd Division) No. 1—03—2257

Opinion filed March 22, 2005.—Rehearing denied May 4, 2005.

Michael J. Pelletier and Miriam Sierig, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Teresa Abreu, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Defendant Ernie Sanders appeals from an order of the circuit court resentencing him for a second time upon a second remand to three 10-year terms of imprisonment for each of his aggravated criminal sexual assault convictions, to be served consecutively. On appeal, defendant contends that the trial court erred in sentencing him because it increased his sentences upon remand and, alternatively, abused its discretion in ordering that his sentences run consecutively. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

Defendant was indicted on 54 counts of charges ranging from aggravated criminal sexual assault to aggravated criminal sexual abuse. Prior to trial, the State nol-prossed 31 of the counts, and defendant elected to have a bench trial on the remaining counts. The charges

stemmed from allegations that defendant, between December 1993 and March 17, 1994, sexually molested his two stepdaughters, who at the time were ages 12 and 9.

At trial, M.W., the eldest victim, testified that on March 17, 1994, defendant entered the bedroom she shared with her younger sister D.W. and told M.W. to go into the living room. M.W. fell back asleep, but defendant returned and lifted her out of bed. She then went into the living room. There, defendant instructed M.W. to remove her underpants and to get on her knees. M.W. testified that she did this and placed her face into her hands, which were on the floor. At this time, M.W. stated that defendant pressed his penis against her buttocks in a way that hurt more than when she strained to go to the bathroom. According to M.W., this was not the first time defendant engaged in this conduct with both herself and D.W. over the course of several months. In addition, defendant at times placed his penis in M.W.'s mouth and pressed it against her vagina. Defendant also used a rubber penis and pressed that against M.W.'s buttocks and vagina. On cross-examination, M.W. stated that until March 1994, she had not told anyone of the abuse because she feared for her safety even though at no time did defendant threaten her and never told her to stay silent. M.W. further stated that defendant had used the rubber penis to penetrate, at least partially, her vagina and anus.

Essie Mae W., the victims' grandmother, testified, as an outcry witness, that on March 18 she went to her daughter Delores' house because Delores had left a message asking Essie Mae to pick her up "before she be dead." Upon arriving at the apartment, Essie Mae spoke with Delores and observed physical injuries on her. According to Essie Mae, Delores stated that defendant had abused her. While Delores was in the process of packing her and the children's belongings, Essie Mae spoke with M.W., who was crying. Essie Mae asked M.W. what was wrong and whether defendant "[had] been messing with [M.W.] too." M.W. answered that defendant had mistreated her. Essie Mae then pressed about exactly what defendant had done, and M.W. related to Essie Mae the circumstances surrounding the sexual abuse of herself and D.W. Essie Mae then told Delores what M.W. had disclosed to her. A short time later, defendant entered the apartment and a fight between Delores, defendant, and Delores' brother began. Defendant subsequently fled the apartment, after which Essie Mae, Delores, M.W., D.W., and several other persons who had accompanied Essie Mae to the apartment went to the police station.

Delores W., M.W.'s mother, testified that her relationship with defendant ended on March 17 or 18, after she learned of defendant's abuse of M.W. and D.W. On March 17, defendant became physically

abusive toward Delores and, at that time, she decided to leave him and take the children. Delores called her sister to pick her and the children up the next day, which her sister did, along with her mother and brother. After her mother and the others had arrived, defendant returned and Delores confronted him about the sexual abuse of M.W. A fight ensued, and after defendant fled, Delores and the others went to the police station. Later, Delores and a police officer returned to the apartment looking for defendant and, at that time, recovered the rubber penis and a handgun. On cross-examination, Delores stated that she had been with defendant for 11 years and that prior to this incident there were never any allegations of sexual abuse. According to Delores, she never used the rubber penis, she did not purchase it with defendant, nor did she know where defendant kept it all the time. Defendant was ultimately arrested on March 26.

Defendant testified on his own behalf, denying the allegations of abuse against M.W. and D.W. According to defendant, he and Delores were having marital problems that had persisted for years. Defendant stated that Delores, contrary to her testimony, frequently used the rubber penis by herself. Defendant denied ever allowing the children to see the rubber penis or leaving it around the apartment. Shortly before March 18, during an argument, defendant informed Delores that he was leaving her because he was tired of living with her. Defendant stated, however, that he was not serious about this statement and was only saying it because he was angry. After this argument on March 16, defendant left the apartment around 7 p.m., then returned later that evening. After he returned, he and Delores made up and had sex. The next morning, he and Delores were arguing again because he was upset that when he returned from taking a shower and wanted to make love, Delores' "leg was all wet." At this time, defendant again told Delores he was leaving her the next day and taking their son, E.S. Defendant left the apartment but returned later in the day and said everything was "normal like nothing had happened." On this night, defendant laid down around 11 p.m. with Delores, watched TV, and apparently fell asleep.

On the morning of March 18, defendant left the apartment, returned a short time later and again made love to Delores. He left the apartment again and later saw a van pull up in front of it. At this time, defendant went back into the apartment and was confronted by Delores and several members of her family. A fight began, and once defendant was able to flee, he did. According to defendant, the real motive behind the charges against him was Delores' attempt to get revenge on him because their marriage was going badly.

At the close of the evidence, the trial court found defendant guilty

of three counts of aggravated criminal sexual assault against M.W. Following a sentencing hearing at which defendant presented three witnesses who testified that he was a good father, defendant was sentenced to three consecutive 15-year sentences.

On June 30, 1998, we vacated defendant's sentences and remanded for resentencing based on the fact that the trial court did not make a proper finding either (1) that consecutive sentences were mandatory (730 ILCS 5/5—8—4(a) (West 1996)) or (2) that consecutive sentences were necessary to protect the public (730 ILCS 5/5—8—4(b) (West 1996)). *People v. Sanders*, No. 1—96—3996 (1998) (unpublished order under Supreme Court Rule 23). Upon remand, the trial court conducted a new sentencing hearing and heard evidence in aggravation and mitigation. At this hearing, the State stressed the egregious nature of the crimes and defendant stressed his lack of criminal history. In its ruling, the court stated:

> "Defendant is a predator of young children and that this is, in my mind, something so evil and egregious that certainly it is my finding that based upon the evidence and facts that I heard in this particular case, that this gentleman is certainly, even without any prior criminal record, *** there is no question in my mind that he is a danger to the public."

The court then noted that it had considered the evidence in mitigation, *i.e.*, defendant's witnesses, but nonetheless had a "strong belief" that defendant was a danger to the public. Specifically, the court stated that defendant's crimes were "so heinous and unbelievably degrading and harmful to the public and citizens of our community." Despite this finding, the trial court sentenced defendant to 25 years' imprisonment on each count, to run concurrently. Thereafter, defendant filed a motion to reconsider, which the trial court denied, and defendant appealed.

On appeal, we again vacated defendant's sentences and remanded for a second resentencing on the basis that the trial court improperly increased defendant's sentences upon resentencing. *People v. Sanders*, No. 1—99—1769 (2002) (unpublished order under Supreme Court Rule 23). Upon remand, a different trial judge held a third sentencing hearing. No new evidence was offered; rather, the parties stipulated to the testimony presented at defendant's first sentencing hearing. The trial court, although noting that it had specifically considered defendant's lack of criminal history, concluded that defendant was a danger to the public and sentenced him to 10 years' imprisonment on each count, to run consecutively. Thereafter, defendant filed a motion to reconsider, which the trial court denied. This appeal followed.

## ANALYSIS

### I. Sentence Increase Upon Remand

Defendant first contends that the trial court erred in resentencing him because it, in effect, punished him for exercising his right to appeal, by increasing his sentence upon the second remand, which violates section 5—5—4 of the Unified Code of Corrections (Code) (730 ILCS 5/5—5—4 (West 2002)). Specifically, defendant argues that the trial court's sentence requires him to serve five years longer than the sentence imposed upon his first resentencing.

The State contends that the trial court did not increase defendant's sentences upon remand and that he was not punished for exercising his right to appeal and, thus, section 5—5—4 was not violated because defendant's 10-year sentences are not greater than his 25-year sentences. According to the State, defendant improperly combines the three sentences to form one single sentence.

■ Section 5—5—4(a) of the Code provides, in pertinent part:

"Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing." 730 ILCS 5/5—5—4(a) (West 2002).

Defendant relies upon *People v. Kilpatrick*, 167 Ill. 2d 439, 657 N.E.2d 1005 (1995), which we found directly on point with respect to defendant's sentence challenge in his second appeal, but which is inapplicable in the case at bar because the circumstances are different than they were in defendant's second appeal. In *Kilpatrick*, the trial court sentenced the defendant to six years' imprisonment for home invasion and nine years' imprisonment for attempted murder, to run consecutively. *Kilpatrick*, 167 Ill. 2d at 441. After being sentenced, the defendant filed a motion to reconsider, which the trial court granted. The court resentenced the defendant to a single 15-year sentence for both offenses. *Kilpatrick*, 167 Ill. 2d at 441. On appeal, the supreme court held that the trial court, in resentencing the defendant, impermissibly increased the defendant's sentences in violation of section 5—8—1(c) of the Code. *Kilpatrick*, 167 Ill. 2d at 446-47.

We do not find *Kilpatrick* on point nor any of the other reported cases dealing with increased sentences. *Kilpatrick* and the other cases involved circumstances where the trial court originally ordered consecutive sentences, then later ordered either a single longer sentence (*People v. Jones*, 168 Ill. 2d 367, 370, 659 N.E.2d 1306 (1996)

(the defendant was originally sentenced to 25 years for attempted murder and 25 years for armed robbery, to run consecutively and, upon reconsideration, he was sentenced to only a 30-year term for attempted murder)) or multiple sentences of greater duration that were ordered to run concurrently (*People v. Moore*, 177 Ill. 2d 421, 425, 686 N.E.2d 587 (1997) (the defendant was originally sentenced to 12 years and 18 years on two separate sex offense convictions, to run consecutively and, upon remand, he was sentenced to 30-year sentences on each conviction, to run concurrently); *People v. Walker*, 278 Ill. App. 3d 916, 918-19, 663 N.E.2d 148 (1996) (the defendant was originally sentenced to 100 to 150 years for rape, 100 to 150 years for armed robbery, and 19 to 20 years for attempted murder, to run consecutively and, upon remand, he was sentenced to 100 to 300 years for rape, 100 to 300 years for armed robbery, and 100 to 300 years for attempted murder, to run concurrently)). In each of these cases, the subsequent sentences were held to violate section 5—8—1(c) of the Code. *Moore*, 177 Ill. 2d at 436; *Jones*, 168 Ill. 2d at 371-72; *Walker*, 278 Ill. App. 3d at 920-21. Also, in *People v. Rivera*, 212 Ill. App. 3d 519, 571 N.E.2d 202 (1991), the defendant was originally sentenced to four 4-year terms for four convictions, to run consecutively and, upon reconsideration, he was sentenced to two 6-year terms on two groupings of two convictions, each to run consecutively. *Rivera*, 212 Ill. App. 3d at 523. On appeal, the *Rivera* court held that the defendant's individual sentences were increased in violation of section 5—8—1(c) of the Code. *Rivera*, 212 Ill. App. 3d at 525. None of these circumstances is present in the instant case. Defendant here was sentenced on his first resentencing to three 25-year terms, to run concurrently. On his second resentencing, he was sentenced to three 10-year terms, to run consecutively. Since defendant was not originally sentenced to more than one sentence and then resentenced to a single longer sentence or resentenced to sentences of greater duration that were to run concurrently, these cases do not aid this court.

■ We also find defendant's argument, that he received an increased sentence upon his second resentencing, unpersuasive because defendant clearly fails to view each sentence for each conviction individually and, instead, looks to the total length of the three sentences. Illinois law does not support such a view. The Illinois Supreme Court "has long held that consecutive sentences constitute separate sentences for each crime of which a defendant has been convicted." *People v. Carney*, 196 Ill. 2d 518, 529, 752 N.E.2d 1137 (2001). Specifically, consecutive sentences "cannot be combined as though they were one sentence for one offense." *Carney*, 196 Ill. 2d at 530. Our supreme court has also stated, in connection with proportion-

ality review, that " 'the punishment under each count must be considered by itself. ***' [Citation.]" *Carney*, 196 Ill. 2d at 529-30. More specifically, "[e]ach conviction results in a discrete sentence that must be treated individually." *Carney*, 196 Ill. 2d at 530.

Clearly, the focus of our analysis must be upon whether the sentence was increased for each particular offense. See *Carney*, 196 Ill. 2d at 534. See also *Moore*, 177 Ill. 2d at 434-35 (interpreting *Kilpatrick* as holding "the fact that each *individual* sentence is increased violates the express terms of 5—8—1(c)" of the Code (emphasis added)); *Rivera*, 212 Ill. App. 3d at 525 ("each *individual* sentence was increased," thereby violating section 5—8—1(c) of the Code (emphasis added)). The *Moore* court specifically held, "when an individual sentence for a specific conviction is increased, this must be considered a sentencing increase under [*North Carolina v.*] *Pearce*[, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969),] [and] sections 5—8—1(c) and 5—5—4 [of the Code]." *Moore*, 177 Ill. 2d at 436. See also *People v. Miller*, 286 Ill. App. 3d 297, 300, 676 N.E.2d 309 (1997) (stating that the length of each individual sentence is critical, not the aggregate of sentences; specifically, "in determining whether the defendant's sentence was improperly increased, we consider the individual sentences, not the aggregate of the sentences imposed").

■ Here, defendant's individual sentence for each specific conviction was not increased. Upon his first resentencing, defendant was sentenced to 25 years for each individual conviction. Upon his second resentencing, he was given 10 years for each individual conviction. Clearly, 10 is not greater than 25. The fact that defendant may now be in prison for 30 years (rather than 25 or even 45) is of no consequence based on the above law since the three sentences cannot be added together to form one sentence.

Accordingly, we find that the trial court did not increase defendant's sentences upon his second resentencing.

## II. Propriety of Consecutive Sentences

Defendant next contends that the trial court abused its discretion in ordering his sentences to run consecutively because there are no facts or evidence, either recited by the trial court or apparent from the record, that explains why consecutive sentences are necessary. According to defendant, there is nothing in his history or anything he did since the time of the offenses, there was nothing particularly egregious about the offenses, and there was nothing to suggest he would reoffend to warrant consecutive sentences. Conversely, defendant maintains that the record demonstrates that his potential for rehabilitation is excellent. Defendant further argues that the trial court's sentence was

merely a result of its emotional outrage at defendant's crimes and there is nothing in the record to show that he is a danger to the public. The State contends that the trial court did not err in ordering defendant's sentences to run consecutively because the record shows that it considered the appropriate factors, *e.g.*, defendant put the victims at risk of serious injury and the nature of the offense was extremely serious.

Imposition of consecutive sentences is controlled by section 5—8—4 of the Code, which provided at the time relevant here:

> "(a) \*\*\* The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13, 12—14, or 12—14.1 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively. \*\*\*
>
> (b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5—8—4(a), (b) (West 1996).

Under paragraph (b), it is within the trial court's discretion to impose consecutive sentences upon a defendant. *People v. Peebles*, 125 Ill. App. 3d 213, 223, 465 N.E.2d 539 (1984). When it is within the trial court's discretion to impose consecutive sentences, the record must show that the "sentencing court is of the opinion that a consecutive term is necessary for the protection of the public." *People v. Pittman*, 93 Ill. 2d 169, 178, 442 N.E.2d 836 (1982).

In support of its argument that the trial court did not err, the State relies upon *People v. Lafferty*, 207 Ill. App. 3d 136, 565 N.E.2d 279 (1990). This case is not on point since it involved mandatory consecutive sentences under paragraph (a), not discretionary sentences under paragraph (b). *Lafferty*, 207 Ill. App. 3d at 137. In addition, although the court in *Lafferty* did note that the defendant lacked any prior criminal history of any kind, it was with respect to the defendant's argument that the length of his sentence was excessive, not in the context of whether consecutive sentences were properly imposed. *Lafferty*, 207 Ill. App. 3d at 138.

Similarly, none of the cases relied upon by defendant, *People v. O'Neal*, 125 Ill. 2d 291, 531 N.E.2d 366 (1988), *People v. Rucker*, 260

Ill. App. 3d 659, 633 N.E.2d 146 (1994), or *People v. Gray*, 121 Ill. App. 3d 867, 460 N.E.2d 354 (1984), aid him. Most importantly, none of these cases involved sex crimes, particularly sex crimes against children. In *O'Neal*, the defendant was convicted of murder, rape, and aggravated kidnaping. He was sentenced to 20 years for rape and 15 years for aggravated kidnaping, to run concurrently. He was also sentenced to 40 years for murder, to run consecutively to the other two sentences. The *O'Neal* court concluded that the facts of the case did not justify the consecutive sentence given the defendant's age, background, and criminal history. *O'Neal*, 125 Ill. 2d at 301. Specifically, the defendant was 19 years old, had only one prior conviction, had been oppressed by the individual he murdered (his co-offender), and had been forced by the co-offender to commit other crimes and lewd sexual acts. The court also noted that the defendant did not harm the victim, whom defendant and his co-offender had robbed and raped prior to the murder, after he had killed his co-offender. *O'Neal*, 125 Ill. 2d at 300. *O'Neal* is distinguishable because defendant here was not forced by someone else to commit the crimes he did, nor was he oppressed by anyone.

In *Rucker*, the defendant was convicted of two counts of armed robbery and sentenced to 6 and 14 years, respectively, to run consecutively. On appeal, the defendant argued that consecutive sentences were not necessary to protect the public. *Rucker*, 260 Ill. App. 3d at 660. The *Rucker* court agreed, finding that "on the facts of this case," the trial court erred in ordering the sentences to run consecutively. *Rucker*, 260 Ill. App. 3d at 663. In *Rucker*, the defendant was 17 years old, had no juvenile history, and had suffered a series of personal problems that caused him to ultimately engage in the offenses at issue. In addition, the court noted that the defendant had not been the planner of the crimes, but was cajoled to participate by his co-offender. *Rucker*, 260 Ill. App. 3d at 662-63. *Rucker* is distinguishable because defendant here was the sole participant in the crimes and was not forced or cajoled into committing them by someone else. In addition, there is no evidence in the instant case that defendant was suffering from mental stress or personal problems that led to the commission of the crimes.

In *Gray*, the defendant was convicted of involuntary manslaughter, obstruction of justice, and concealment of a homicidal death in connection with the death of his 2½-year-old stepdaughter. *Gray*, 121 Ill. App. 3d at 868. He was sentenced to five years for the manslaughter and three years for obstruction, to run concurrently, and to nine years for concealment, to run consecutively to the other two sentences. *Gray*, 121 Ill. App. 3d at 868. On appeal, the defendant argued that

the trial court erred in ordering the concealment sentence to run consecutively to the other two sentences. The *Gray* court agreed, noting that this was the first criminal conduct with which the defendant, who was in his twenties, had ever been associated. *Gray*, 121 Ill. App. 3d at 873. Additionally, according to the court, it was not dealing with punishment for the manslaughter, but with augmentation of the punishment for concealment. The court concluded that the facts of the case were insufficient to show that the consecutive sentence was necessary to protect the public. *Gray*, 121 Ill. App. 3d at 873. *Gray* is distinguishable because in the instant case we are dealing with sentencing for the underlying, serious crime, not some lesser offense stemming from it. In addition, as discussed below, the instant charges were not the first criminal conduct with which defendant was ever associated.

More on point to the issue here are *People v. Carter*, 272 Ill. App. 3d 809, 651 N.E.2d 248 (1995), and *People v. Haun*, 221 Ill. App. 3d 164, 581 N.E.2d 864 (1991). In *Carter*, the defendant was convicted of aggravated criminal sexual assault and aggravated criminal sexual abuse with respect to his eight-year-old daughter and five-year-old son. He was sentenced to 15 years for the assault count and 6 years for the abuse count, to run consecutively. The sentences were vacated on appeal because the trial court had erroneously believed that consecutive sentences were mandatory. Upon resentencing, the defendant received the same sentences. *Carter*, 272 Ill. App. 3d at 810. On appeal, the sentences were upheld. Although the defendant in *Carter* had a history of criminal activity, including two serious felonies (none of which involved sex crimes against children), the *Carter* court concluded that consecutive sentences were proper under paragraph (b) of the Code because

"it [was] reasonable for the court to view as more serious these offenses committed by defendant over a period of time during which, as the trial court noted, he had an opportunity to reflect on his actions and the adverse impact they were having on the victims. The fact that the victims were defendant's young children [was] also a proper focus of the trial court's attention, given the authority defendant exercised over them and the violation of trust that occurred." *Carter*, 272 Ill. App. 3d at 812.

The court also noted that the defendant lacked remorse and failed to take responsibility for what he had done. *Carter*, 272 Ill. App. 3d at 813. In conclusion, the *Carter* court stated:

"The trial court was within the bounds of its discretion to consider, as it did, that the public needed protection from defendant in light of the fact that, in committing the offenses, he preyed upon the most vulnerable in society." *Carter*, 272 Ill. App. 3d at 814.

In *Haun*, the defendant was convicted of two counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse. He was sentenced to 10 years on one of the assault counts and 5 years on each of the abuse counts, to run concurrently. He was also sentenced to 10 years on the second assault count, to run consecutively to the other three sentences. *Haun*, 221 Ill. App. 3d at 166. The victim was the defendant's 15-year-old stepgrandaugther and the events occurred from September to November 1985 and again in late 1986. *Haun*, 221 Ill. App. 3d at 166. On appeal, the defendant argued that the trial court erred in ordering the one sentence to run consecutively. Although the *Haun* court noted that consecutive sentences were mandatory under paragraph (a) of the Code, it further concluded that the trial court would not have abused its discretion had sentences been discretionary under paragraph (b), even though the defendant had no prior contacts with the law, had led an " 'exemplary life,' " and had military service. *Haun*, 221 Ill. App. 3d at 170, 176-77.

Although there is no question that defendant here had no prior convictions and appears to have led a crime-free life for the most part, the record demonstrates this was not defendant's first association with criminal conduct. Prior to his arrest in the instant case, defendant had been arrested for theft in July 1984 and for battery in November 1989. Subsequent to his arrest here, defendant was arrested for unlawful use of a weapon (date not clear from the record), battery in November 1994, and criminal trespass to a residence in June 1995. Although all of these charges were "SOLed," they still show that defendant's sole association with criminal activities was not the charges in the instant case. There was also evidence that defendant had physically abused his wife. Further, with respect to defendant's history, the record shows that he did not graduate from high school and never obtained a GED. In addition, with the exception of a six-month period in 1989, defendant had no employment history. The evidence also showed that defendant had a good, strong family throughout the years, who supported him and, according to defendant himself, his parents, who still were together at the time of this case, taught him right from wrong.

■ Balanced against defendant's background and history are the nature and circumstances of the offenses. By defendant's own admission, he was taught right from wrong and, thus, knew that what he did to M.W. and D.W. was wrong. However, he continued to deny any involvement, attempted to place the blame for the rubber penis on his wife, and never showed remorse for his actions. The court's comments in *Carter*, quoted above, most exemplify the situation here and the seriousness of the offenses. Specifically, defendant here, like the

defendant in *Carter*, engaged in conduct over a period of time during which he had the opportunity to reflect upon his actions and the adverse impact his conduct would have on these young girls. Defendant was a father figure to these girls and exerted his authority over them in violation of their trust. As the trial court stated, defendant's conduct was "so heinous and unbelievably degrading and harmful to the public and citizens of our community."

We find, like the court in *Carter*, that the trial court was within its bounds of discretion, despite defendant's lack of criminal history, to conclude that consecutive sentences were necessary to protect the public. Accordingly, we affirm the trial court's imposition of consecutive sentences.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HALL and GARCIA, JJ., concur.